UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUNDAGE-BONE | ) | Case No. 10-10758 ABC |
| CONCRETE PUMPING, INC. | ) | Chapter 11 |
| EIN: 84-0972141 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 10-10760 ABC |
| JLS CONCRETE PUMPING, INC. | ) | Chapter 11 |
| EIN: 84-0972141 | ) | |
| | ) | *Jointly Administered Under* |
| Debtor. | ) | *Case No. 10-10758 ABC* |

**DEBTORS' RESPONSE TO MOTION FOR CONTINUANCE OF HEARING FILED BY WELLS FARGO**

BRUNDAGE-BONE CONCRETE PUMPING, INC. ("Brundage-Bone") and JLS CONCRETE PUMPING, INC. ("JLS" and, with Brundage-Bone, the "Debtors"), by and through their counsel, Sender & Wasserman, P.C., hereby respond to the Motion for Continuance Hearing on Debtors' Motion Seeking Entry of Interim Order Approving Post-Petition Secured and Unsecured and Superpriority Financing Pursuant to 11 U.S.C. § 364(c) as follows:

1.     There is no dispute that the Debtors need immediate access to financing to avoid immediate and irreparable harm to their estates. The issue Wells Fargo disputes is whether the debtor in possession financing agreement (the "Junior DIP Facility") that is the subject of the Motion for Entry of Expedited Orders is the best financing option available to the Debtors. After appropriate investigation and analysis, the Debtors have concluded that the Junior DIP Facility presents the best available financing alternative. Bankruptcy courts routinely defer to a debtor's business judgment on business decisions, including the decision to borrow money. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (Walsh, J.) (noting that approval of interim loan, receivables facility and asset-based facility "reflect[ed] sound and prudent business judgment . . . [was] reasonable under the circumstances and in the best interests of [the debtor] and its creditors"). The District of Colorado has noted that a debtor's authority to operate its business necessarily includes "the concomitant discretion to exercise reasonable judgment in ordinary business matters. . . . The discretion to act with regard to planning business activities is at the heart of the debtor's power. . . . Business judgments should be left to the board room and not to this Court." *See In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985). Indeed, "[m]ore exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's

provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  This is particularly true at a first day hearing seeking interim approval of debtor in possession financing given what is at stake, which is the ability of a debtor to avoid liquidation and, instead, reorganize for the benefit of its estates and all of its creditors.

2.   Here, the Debtors reasonably exercised their business judgment when they determined to enter into the Junior DIP Facility after considering all relevant circumstances.  The Junior DIP Facility provides necessary liquidity on reasonable terms, and interim approval of the facility at this time will enable the Debtors to move their restructuring efforts forward.  For the reasons described herein and as the Debtors are prepared to address with additional testimony at the hearing this afternoon, even a one-day delay of the first day hearing could have a substantial negative effect on the Debtors' businesses.

3.   The Debtors are making an extraordinary effort to send the message of stability to the marketplace, and interim approval of the Junior DIP Facility proves this message without further litigation, delay and uncertainty.  Authorizing the interim relief under the Junior DIP Facility will instill confidence in employees, customers, vendors and other key constituencies at the outset of these cases while allowing the Debtors to continue their business operations in the ordinary course.

4.   Most importantly, the Debtors' weekly payroll is scheduled to be paid Thursday, January 21.  If the Interim DIP Motion is not granted by Wednesday evening, the Debtors would be unable to ensure that employees are paid tomorrow, January 21, 2010, without the liquidity provided by the Junior DIP Facility.

5.   Moreover, any offer from Wells Fargo to allow other motions to go forward while continuing the hearing on the interim Junior DIP Facility order is an empty offer since the Debtors cannot fund *any* aspect of their operations without the interim relief under the Junior DIP Facility.

6.   Not funding payroll on time would have significant negative effects on the Debtors' employees, which would significantly decrease the value of the Debtors' estates.  In addition, without immediate access to financing, the Debtors will be unable to procure fuel and other supplies necessary to operate their business, which would further destabilize the restructuring efforts and severely impair any chance of reassuring customers, vendors and other key constituents that the restructuring is merely an interim step to fix the business.

7.   Furthermore, nothing in the interim order authorizing the initial $5.2 million of liquidity under the Junior DIP Facility prejudices Wells Fargo's ability to formulate a financing proposal for the Debtors to consider after the Debtors receive interim approval of the Junior DIP Facility before the final hearing.  The Debtors respectfully assert that negotiating with Wells Fargo—should it present an alternative proposal, deliberately and without the threat of instability, lost jobs and customers during these critical first days of these cases—is a prudent path that will maximize the best results.  The Debtors are perfectly willing to consider any

proposal, in the exercise of their fiduciary duties and business judgment, between now and the final hearing on the Junior DIP Facility.

8. The Debtors' decision to obtain financing from Commercial Finance Services 110 LLC as DIP lender, however, is also supported by the recent course of dealing with Wells Fargo. And Wells Fargo's requests, respectfully, must be considered in light of their recent actions. The Debtors have sought to restructure their business outside of chapter 11 in recent months. Wells Fargo, in the face of these efforts, has leveraged its lien position and provided piecemeal liquidity by restricting the Debtors' access to cash. Prepetition, Wells Fargo instituted the practice of sweeping the Debtors' bank accounts on a nightly basis, forcing the Debtors to negotiate for every disbursement, sometimes after the fact. For example, in just the last week Wells Fargo refused to honor transfers from a Wells Fargo-controlled account to fuel providers and trade vendors. Wells Fargo's deliberate actions played no small role in the timing of this filing. Wells Fargo's Request for Continuance is just the latest example of these tactics, jeopardizing, at the very least, the Debtors' ability to pay employees, purchase fuel, pay other critical expenses and otherwise continue operating in the ordinary course. Indeed, Wells Fargo has specifically refused to consent to the use of cash collateral. Any motion to use cash collateral to honor the necessary obligations of the company, assuming that Wells Fargo requires some additional form of adequate protection, requires further motions and notice not presently before the Court.

9. Contrary to their assertion, Wells Fargo has been unable to propose postpetition financing on superior, or even equal, terms as compared with the fully-negotiated and documented Junior DIP Facility. The prepetition proposals from Wells Fargo required the Debtors to appoint a chief restructuring officer from a Wells Fargo-provided list of firms. In light of all these events, the Debtors' decision to obtain non-priming financing from a different source than Wells Fargo is clearly within their business judgment.

10. Moreover, the Debtors are finalizing the terms of a plan of reorganization under which employees, customers, trade partners and lenders receive the maximum benefit of the reorganized Debtors. The interim relief requested to approve the Junior DIP Facility will allow the Debtors to continue their negotiations with Commercial Finance Services 110 LLC so that the Debtors can file their plan of reorganization, which will facilitate negotiations with their constituents. If the Debtors are forced to focus their attention during these critical first few days on a fight Wells Fargo, the Debtors believe all constituents will suffer

11. The Debtors' decision to obtain financing under the Junior DIP Facility was a reasonable exercise of the Debtors' business judgment. Receiving Court approval on Wednesday, January 20, will ensure that the Debtors' payroll and other necessary obligations are satisfied to avoid immediate and irreparable harm to the Debtors. Accordingly, the Debtors respectfully request that the Court deny Wells Fargo's Request for Continuance and grant the approval of the Junior DIP Agreement on an interim basis.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court deny the Motion for Continuance and grant such other relief as deemed appropriate.

-4-

Dated this 20th day of January, 2010.

<div style="margin-left:40%">

SENDER & WASSERMAN, P.C.

*/s/ David V. Wadsworth*
_____
Harvey Sender, #7546
John B. Wasserman, #10011
David V. Wadsworth, #32066
Matthew T. Faga, #41132
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
dvw@sendwass.com
ATTORNEYS FOR THE DEBTOR

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of January, 2010, I served a true and correct copy of the foregoing **DEBTORS' RESPONSE TO MOTION FOR CONTINUANCE OF HEARING FILED BY WELLS FARGO** on the following by e-mail:

John F. Young, Esq.
Email: jyoung@markuswilliams.com

Risa Lynn Wolf-Smith
Email: rwolf@hollandhart.com

Leo M. Weiss
Email: leo.m.weiss@usdoj.gov

Michael J. Pankow
Email: mpankow@bhfs.com

<div style="margin-left:50%">

*/s/ Rhonda A. Reynolds*
For Sender & Wasserman, P.C.

</div>