**WELLS FARGO BANK, NATIONAL ASSOCIATION**

**Brundage-Bone Concrete Pumping, Inc.**

**BINDING TERM SHEET REGARDING DIP LOAN FACILITIES,
AGREEMENT FOR USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**

**January 25, 2010**

| | |
|---|---|
| **Borrower:** | Brundage-Bone Concrete Pumping, Inc., a Colorado corporation, and debtor and debtor in possession (the "Borrower"). |
| **Other Parties**: | JLS Concrete Pumping, Inc. ("JLS"), a California corporation, and debtor and debtor in possession, is currently anticipated to be a party to the facilities described below as a grantor of liens and security interests in its real and personal property. |
| **Guarantor:** | JLS |
| **Lender:** | Wells Fargo Bank, National Association (the "Bank"). |
| **DIP Credit Facilities:** | **Interim Facility:** An interim DIP credit facility (the "Interim Facility") of up to a maximum amount equal to the sum of (i) excess availability set forth in the Borrower's most recently delivered Borrowing Base Certificate under the Existing Credit Agreement (as defined below), and (ii) $1,000,000 (the "Interim Facility"), convertible upon approval at the Final Hearing to a Final facility (the "Final Facility") and upon the satisfaction of all of the terms and conditions set forth herein. The issuance of any new stand-by letters of credit under the Interim or Final Facilities is not anticipated; however, drawings under any of the stand-by letters of credit issued and outstanding under the Existing Credit Agreement (as defined below) shall be considered post-petition advances under the Interim Facility. letter of credit fees shall be paid current through advances under the Interim Facility. The Interim Facility will continue to provide credit facilities substantially on the terms set forth in the Existing Credit Agreement (as defined below) as in effect on the date hereof.[1] |
| | **Final Facility:** Upon the satisfaction of all terms and conditions herein (including court approval at the Final Hearing), the Interim Facility shall be deemed converted to the terms and conditions described below as the "Final Facility". The Final Facility will continue to provide credit facilities substantially on the terms set forth in the Existing Credit Agreement (as defined below) as in effect on the date hereof[2], and |

---

[1] As of the date hereof, the Existing Credit Agreement includes a Revolving Line of Credit with a $3,000,000 Overadvance Facility having a balance of $3,516,930.34 and issued Standby Letters of Credit of $7,450,000. The Credit Facilities contemplate an increase in the Overadvance Facility from $3,000,000 to $4,000,000.

|  |  |
|---|---|
|  | substantially on the terms set forth in the Interim Facility, but with an increase in the maximum amount to reflect the rollup of amounts due under the Existing Credit Facility. The Interim Facility and the Final Facility shall be collectively referred to herein as the "Credit Facilities" and the loan documentation executed in connection therewith shall be collectively referred to herein as the "DIP Documents." |
| **Use Of Cash Collateral** | Borrowing capacity under the Interim Facility will be supplemented by amounts made available to the Borrower through use of cash collateral under the terms of a Cash Collateral Order containing protections to the Bank normally found in such Orders, including ,but not limited to, replacement liens on post petition accounts receivable and spare parts inventory. The use of cash collateral will be tied both to the Borrower's Budget$^3$ and to the Borrowing Base (defined below). |
| **Purpose:** | The Credit Facilities will be used for (a) in the case of the Interim Facility, ongoing working capital needs, all in accordance with and as limited by the Borrower's Budget; (b) in the case of the Final Facility,(i) ongoing working capital needs, including but not limited to, the payment of court-approved professional fees and expenses, incurred during the Borrower's chapter 11 case (the "Bankruptcy Case"), arising after the Petition Date, all in accordance with and as limited by the Borrower's Budget; and (ii) payment in full of all amounts outstanding under the Existing Credit Facility (as defined below). |
| **Loan Availability:** | Advances under the Interim Facility would be limited to the lesser of (i) the maximum amount of the Interim Facility or (ii) the sum of (a) 80% of the eligible pre-petition and post-petition accounts receivable of each of Borrower and JLS Concrete Pumping, Inc. ("JLS"), (b) 50% of the value of Borrower's spare parts inventory (exclusive of work in process and inventory which is obsolete, unsaleable or damaged) as deemed eligible by Bank, provided, however, the Bank will not change its valuation methodology for spare parts inventory prior to the final hearing; and (c) $4,000,000, less (d) such reserves to be reasonably established by Bank, and less (e) the outstanding balance of any revolving loans, letters of credit or other related obligations extended under the "Line of Credit" provisions contained in that certain Credit Agreement dated as of June 25, 2008 by and between Borrower and Bank (as amended, restated or otherwise modified from time to time, the "Existing Credit Agreement")$^4$ and (f) less the outstanding balance of the loans under the Interim Facility ("Borrowing Base"). Eligibility shall be determined in each case |

---

$^2$ As of the date hereof, the Existing Credit Agreement includes a Revolving Line of Credit with a $3,000,000 Overadvance Facility having a balance of $3,516,930.34 and issued Standby Letters of Credit of $7,450,000. The Interim Facility contemplates an increase of the Overadvance Facility from to $3,000,000 to $4,000,000.

$^3$ Such budget to be consistent with the Debtor's 13 Week Budget accompanying its Motion Seeking Expedited Entry of Orders, excluding, however, the $200,000 proposed loan fee to Aurora/Commercial Finance Services 110 LLC set forth therein.

$^4$ The Bank and Borrower are also parties to Loan Restructuring and Forbearance Agreement, dated as of July 24, 2009, as amended by that certain First Amendment to Loan Restructuring and Forbearance Agreement, dated as of October 16, 2009, (the "First Amendment") and Second Amendment dated as of December 31, 2009 ("Second Amendment") (collectively, the "Forbearance Agreement"). The term "Existing Credit Agreement" includes amendments provided for in the Forbearance Agreement, the First Amendment and the Second Amendment. Defaults existing under the Existing Credit Agreement as of the Petition Date (the "Existing Prepetition Defaults") shall not constitute defaults under the Credit Facilities.

105727.0910/1802151.6

on terms consistent with those set forth in the Existing Credit Agreement. Value shall be defined as the lower of cost or market provided, however, the Bank will not change its valuation methodology for spare parts inventory prior to the final hearing;

Advances under the Final Facility would be limited to the lesser of (i) the maximum amount of the Final Facility or (ii) the sum of (a) 80% of the eligible accounts receivable of each of Borrower and JLS Concrete Pumping, Inc. ("JLS"), (b) 50% of the value of Borrower's spare parts inventory (exclusive of work in process and inventory which is obsolete, unsaleable or damaged) as deemed eligible by Bank, less (c) such reserves to be reasonably established by Bank, and less (d) the aggregate outstanding balance of any loans, letters of credit or other obligations then outstanding under the Final Facility. Eligibility shall be determined in each case on terms consistent with those set forth in the Existing Credit Agreement. Value shall be defined as cost or market value.

**Security:**  All obligations to Bank under the Credit Facilities would be secured by first priority liens upon all of Borrower's and JLS's prepetition and postpetition existing and future acquired assets and the proceeds and products thereof of the same character and category as are subject to the existing pre-petition security interests (the "Prepetition Liens") securing the Bank's prepetition Line of Credit, Letter of Credit and Overadvance Facilities, including, without limitation, all prepetition and postpetition accounts receivable, inventory, rolling stock, machinery and equipment, real property, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, general intangibles (including tax refunds, customer deposits and security deposits), intellectual property and investment property and that certain real property supporting the Overadvance Facility as defined in the Existing Credit Agreement, pursuant to 11 U.S.C. § 364 (d)(1); pursuant to 11 U.S.C. § 364 (c)(1), a super priority administrative claim; pursuant to 11 U.S.C. § 364 (c)(2), a first priority lien against all unencumbered assets (or assets encumbered by avoidable liens) of the Borrower and JLS; and pursuant to 11 U.S.C. § 364 (c)(1), a subordinate lien against all remaining assets of the Borrower and JLS (excluding all avoidance actions arising under chapter 5 of the Bankruptcy Code or otherwise).

**Closing Date:**  The closing on the Interim Facility will take place immediately upon entry of an Interim Order the Interim Facility (the "Interim Order"), in form satisfactory to Lender. The Final Facility shall close immediately upon entry of the Final Order approving the Final Facility, in form satisfactory to Lender. Both the Interim and Final Orders shall include findings of good faith pursuant to Section 364(e).

**Maturity Date:**  The Interim Facility will mature on the earlier of (i) entry of the Final Order approving the Final Facility; (ii) the Effective Date of a confirmed Plan of Reorganization, (iv) the date on which the Bankruptcy Court approves a sale of all or substantially all of the Borrower's and JLS's assets pursuant to Section 363 of the Bankruptcy Code, (v) the date that

is 45 days after the Petition Date if the Final Order shall not have been entered by the Bankruptcy Court on or before such date, and (vi) the date of any accelerated maturity due to an event of default under the Interim Facility.

The Final Facility will have a Maturity Date on the earlier of (i) the date that is 180 days after the Petition Date; (ii) the Effective Date of a confirmed Plan of Reorganization; (iii) the date on which the Bankruptcy Court approves a sale of all or substantially all of the Borrower's and JLS's assets pursuant Section 363 of the Bankruptcy Code; and (iv) the date of any accelerated maturity due to an event of default under the Final Facility.

**Facility Fees:** Upon entry of the Interim Order, the Borrower will pay the Bank a fully-earned and non-refundable facility fee of $25,000. Upon the entry of the Final Order, the Borrower will pay the Bank a fully-earned and non-refundable facility fee of $75,000.

**Interest Rate:** A fully-floating interest rate equal to daily LIBOR, based on a one month tranche, plus 4.5%.

**Terms and Conditions:** The DIP Documents shall contain representations and warranties, covenants, and events of default substantially similar to those set forth in the Existing Credit Agreement, and other provisions acceptable to Bank, including the following:

1. Not later than the third business day of each week (and not later than the Closing Date with respect to the week in which the Closing Date occurs), Borrower shall provide to Bank (a) a copy of a budget (such budget, with modifications proposed by the Borrower and approved from time to time by the Bank, the *"Budget"*) in form and substance consistent with the Budget currently provided to Bank, reflecting anticipated weekly cash receipts and expenditures for the succeeding 13 weeks, (b) a copy of a variance report (the *"Variance Report"*) reflecting variances in each line item as set forth in the Budget of actual cash receipts and disbursements for the preceding week and the percentage variance for such actual results from those reflected in the Budget for the preceding week, and a written explanation of such variance, (c) a borrowing base certificate, and (d) a detailed listing of all pre-petition and post-petition accounts payable.

2. The DIP Documents shall contain Events of Default required by the Bank, including, without limitation: (i) the entry of an order dismissing the Bankruptcy Case or converting the Bankruptcy Case to a chapter 7 case, (ii) the entry of an order granting any other claim super-priority status or a lien equal or superior to that granted to the Bank in Pre and Postpetition Collateral, (iii) the filing of any pleading seeking to stay, reverse, vacate or otherwise modify any of the DIP Documents without the prior written consent of the Bank,

(iv) a Final financing Order is not entered within 45 days after the Petition Date, (v) the failure of Borrower to pay (a) interest or fees when due under the Credit Facilities and such default shall continue for two business days, or (b) principal, if any, when due, (vi) the failure of Borrower to comply with any negative covenants or any other obligation or provision of the DIP Documents, (vii) the consolidation or combination of Borrower with any other person (other than Borrower) except pursuant to a confirmed plan of reorganization as contemplated in the plan of reorganization, (viii) the failure of Borrower to perform or comply with any term or covenant of the DIP Documents and such default shall continue unremedied for a period of 10 calendar days, (ix) any representation warranty, or financial information provided by Borrower shall be incorrect or misleading in any material respect when made, (x) a variance in a weekly Budget of more than 15%; (xi) the Borrower or JLS seeking the extension of the exclusivity period unless otherwise consented to by Bank in writing in its sole discretion; (xii) the entry of an contested order in the Bankruptcy Case granting relief from the automatic stay of 11 U.S.C. § 362 to any party in interest or holder or holders of a lien or security interest on any portion of Bank's prepetition collateral or postpetition collateral (collectively, "Bank's Collateral") or on any assets of Borrowers' necessary to the continuing operations and ability to perform the Budget and repay the DIP Facilities allowing such party to foreclose or otherwise realize upon such liens or security interests, (xiii) the sale of Bank's Collateral (other than Inventory in the ordinary course of Borrower's business) without final and indefeasible payment to Bank of the total Prepetition Obligations defined below) in cash or other immediately available funds and (xiv) there occurs a material adverse change in the assets, business, financial condition, income or prospects of the Borrower and JLS since the Petition Date.

3. Upon the occurrence of an Event of Default, the Bank shall be entitled to a hearing on motion for relief from the automatic stay on 10 days notice so that Bank may immediately terminate the Interim Facility, cease making all postpetition advances to Borrower, and, exercise all rights available to Bank under the DIP Documents.

4. Borrower shall provide Bank with all information and reports required by the DIP Documents, and such other periodic financial and collateral reporting, annual financial statements, monthly and quarterly internally-prepared financial statements, annual financial projections, and periodic borrowing base certificates, receivables agings and inventory reports as may be requested by the Bank.

5. Borrower shall maintain insurance with insurance carriers (reasonably acceptable to Bank) against such risks and in such

amounts as is customary for similar businesses, naming Bank as mortgagee/loss payee.

6. Restrictions on, among other things, distributions and dividends, acquisitions and investments, indebtedness, liens, affiliate transactions, and capital expenditures (excluding the transaction with Borrowers affiliate, B&B Rentals).

7. Borrower shall continue and maintain its existing cash management system(s), existing as of the Petition Date (hereafter defined) to continue postpetition on terms acceptable to Lender.

8. Bank shall have the right to conduct future periodic appraisals and field examinations of the collateral, at Borrowers expense (in an amount not to exceed $50,000.00).

9. The Final Facility shall be in lieu and instead of any surcharge of the expenses of the administration of the Bankruptcy Case to Bank as a secured creditor pursuant to 11 U.S.C. §§ 506(c), 552(b) or otherwise, and no expense of administration shall be prior to or on a parity with the total obligations under the Interim Facility.

10. No sale, lease or other disposition of Bank's Collateral outside of the sale of Inventory in the ordinary course of Borrower's business (an "Asset Sale") shall be requested or consummated without Bank's prior written consent. From the proceeds of any Asset Sale, Borrower shall immediately pay, or cause to be paid, to Bank all of the net proceeds of such Asset Sale.

11. In the event the Maturity Date occurs before the entry of a Final Order due to the approval of a DIP facility by a new DIP lender, the new DIP Lender will be required to pay Bank an amount equal to (i) the balance then owing under the Existing Credit Agreement and (ii) the balance then owing on the Interim Facility. In addition, Lender will be entitled to either substitute Letters of Credit or Cash Collateral for any outstanding Letters of Credit issued under the Existing Credit Agreement. In consideration of the foregoing, Lender will release liens on the inventory, accounts and the real estate pledged under the terms of the Forbearance Agreement.

12. Borrower and JLS shall agree, and fully support the inclusion of provisions in the Final Order, that release the Bank from any and all claims by the Borrower or JLS had or may have had against the Bank as of the Petition Date.

13. Borrower and JLS shall agree, and fully support findings in the Final Order, that (i) the balance of loans and letters of credit under on the Line of Credit facility and Letter of Credit sub-facility of the

Existing Credit Agreement outstanding as of the Petition Date (the "Prepetition Obligations") constitute a valid, binding and enforceable obligation owed to Bank by Borrower and (ii) Bank's liens on and security interests in the Collateral existing as of the Petition Date (the "Prepetition Collateral") are fully and properly perfected and have a first priority over all other liens, interests or rights in and to such Prepetition Collateral except for Permitted Liens The Interim Order shall provide other parties in interest a 25 day period within which to file objections to the above findings.

14. Under no circumstances may the Borrower use the funds advanced to the Borrower or proceeds of the Bank's collateral to pursue any claims or litigation against the Bank.,including any carve out for professional fees to pay any reasonable professional fees and expenses incurred in connection with asserting any claims or causes of action against the Bank or any of its Affiliates and/or challenging or raising any defense with respect to the Borrower's Obligations under this Agreement and/or the Loan Documents or any lien with respect thereto.  The foregoing shall not be construed as a consent to the allowance of any reasonable fees and expenses referred to above and shall not affect the right of the Bank to object to the allowance and payment of such amounts.

**Documentation:** The Interim Facility and Final Facility will be subject to the negotiation and execution of a satisfactory addendum to the Existing Credit Agreement, consistent with the terms hereof and satisfactory to the Bank, together with related security agreements, notes, guarantees, bankruptcy court orders and any other DIP Documents as shall be requested by the Bank.  The Interim Facility and Final Facility will be consistent in form and substance to the Existing Credit Agreement, but updated to reflect conditions representative of an ongoing bankruptcy case, including, for example, the deletion of financial covenants and certain other covenants to be agreed upon by the parties.

**Conditions Precedent to Closing of Credit Facilities:** Closing of the Interim Facility shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type, or reasonably required by the Bank:

1. All necessary consents and approvals to the financings shall have been obtained from the Bankruptcy Court regarding acceptable loan documentation, including the Interim Order which shall be entered no later than Tuesday, January 26, 2010, or such later date as may be agreed to by the Bank.  The Interim Order shall be in form and substance satisfactory to the Bank and shall either contain a finding that Bank is extending the credit of good faith or be a final, non-appealable order.

2. Preparation, execution and delivery of definitive documentation (the "Definitive Documentation") satisfactory to the Bank no later than January, 28, 2010, or such other later date as is agreed to by the Bank.

3. Except for the existing bankruptcy proceedings, the absence of any litigation not stayed in the Bankruptcy Court or other proceeding the

        result of which would reasonably be expected to have a material adverse effect on the Borrower or JLS.

        4. The absence of any material changes in governmental regulations or policies affecting the Borrower, JLS or the Bank prior to the Closing Date.

        5. With respect to the collateral securing the amounts outstanding under the Existing Credit Agreement, the Bank shall be provided adequate protection in the form of a replacement lien on post petition collateral of the same class and category together with the protections of Section 364(c)(1)(2) and (3).

**Expenses and Indemnification:** The Borrower will pay the Bank's reasonable legal and other out-of-pocket expenses incurred in connection with the negotiation, preparation and execution of any of the DIP Documents. Documentation shall contain enforcement expense and indemnification provisions for the benefit of the Bank.

**Other:** Substantially all other terms and conditions described in the Existing Credit Agreement shall be incorporated into the DIP Documents, updated to reflect conditions representative of a debtor in possession case, and with customary carve-outs, exceptions and qualifications and certain other carve-outs and exceptions to be agreed. The aggregate amount of any carve-out shall not exceed $1.0 million.

This Summary of Proposed Terms and Conditions ("Term Sheet") is intended as an outline only of certain of the material terms of the Interim Facility and, the Final Facility, and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions which would be contained in definitive legal documentation for the Interim Facility and the Final Facility. Moreover, nothing contained in this Term Sheet constitutes or should be construed as a waiver of any rights or remedies of the Bank arising from the occurrence of any Event of Default.

We are pleased to have the opportunity to work with you in connection with this important financing.

    Very truly yours,

    WELLS FARGO BANK, NATIONAL ASSOCIATION

    By: _____
    Name: _____
    Title: _____

ACCEPTED AND AGREED TO
AS OF THIS __th DAY OF JANUARY 2010:

**BRUNDAGE-BONE CONCRETE PUMPING, INC.**

By: _____
Name: _____
Title: _____

**JLS CONCRETE PUMPING, INC.**

By: _____
Name: _____
Title: _____

105727.0910/1802151.6