# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUNDAGE-BONE CONCRETE PUMPING, INC., | ) ) | Case No. 010-10758 ABC Chapter 11 |
| EIN: 84-0972141 | ) ) | |
| Debtor. | ) ) | |
| In re: | ) | |
| | ) | Case No. 010-10760 ABC |
| JLS CONCRETE PUMPING, INC., | ) | Chapter 11 |
| EIN: 84-0972141 | ) ) | |
| | ) | *Jointly Administered under* |
| Debtor. | ) | *Case No. 10-10758 AB*C |

**STIPULATED ORDER UNDER 11 U.S.C. §§ 361, 362, 363 AND 364, FED. R. BANKR. P. 4001, AND BANKR. L.R. 4001 2, (A) AUTHORIZING DEBTORS TO INCUR POSTPETITION INDEBTEDNESS, (B) GRANTING SECURITY INTERESTS AND SUPERPRIORITY EXPENSE CLAIMS, (C) AUTHORIZING USE OF CASH COLLATERAL AND (D) GRANTING OTHER RELIEF**

This matter comes before the Court upon the Debtors' Motion for Interim and Final Approval of Stipulation for Use of Cash Collateral and DIP Loan (the ("Wells Financing Motion"), seeking approval for DIP Loan financing for Brundage-Bone Concrete Pumping, Inc., a Colorado Corporation, and JLS Concrete Pumping, Inc., a California corporation, the debtors and debtors in possession in the above cases (collectively, "Debtors"), as well as approval of the stipulated agreement for the use of cash collateral between Wells Fargo Bank, N.A. ("Lender"). The Debtors, pursuant to sections 105, 361, 362, 363(c), 364(c)(l), 364(c)(2), and 364(c)(3) of the Bankruptcy Code and Bankruptcy Rules 2002,4001, 4001-2 and 9014, request that the Court grant certain relief and issue an order (1) authorizing Debtors to incur the obligations under the Interim Facility as set forth on the Binding Term Sheet Regarding DIP Loan Facilities Agreement, For Use of Cash Collateral and Adequate Protection, a copy of which is attached hereto as <u>Exhibit A</u> and incorporated by reference (the "Term Sheet"), (2) authorizing certain

1

postpetition liens and superpriority claims, (3) authorizing the use of certain cash collateral and adequate protection, (4) granting other relief in favor of Lender as requested in the Motion, and (6) setting the Final Hearing. Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to such terms in the Term Sheet attached hereto.

Notice of the Debtor's pending Motion Seeking Expedited Orders (the "First Day Motions") (Docket No. 6) and the Interim Hearing thereon was served by Debtors by facsimile, email, overnight delivery, U.S. mail, or such other means on the Noticed Parties.  The Interim Hearing was held by this Court on the First Day Motions beginning on January 20, 2010 and continued from time to time thereafter.  Various parties in interest have objected to certain of the relief requested in the First Day Motions, including the Debtors' requested approval of a DIP Loan (the "CFS DIP Loan") from Commercial Finance Services 110 LLC ("CFS").  One of the objecting parties, Wells Fargo Bank, N.A., opposed the CFS DIP Loan in part on the basis that Wells Fargo would consent to the Debtors' use of its cash collateral (with adequate protection) and offer the Debtors' a DIP Loan facility, all on more favorable terms than those proposed by CFS.

The Debtors have therefore now filed the Wells Financing Motion, with a further revised proposed interim budget (the "Budget"), seeking to withdraw their request for approval of the CFS DIP Loan, seeking instead this Court's approval of the Wells Financing Motion.

Upon the record made by Debtors before and at the Interim Hearing, including the terms and conditions of the CFS Motion, the proposed CFS DIP Loan, the Budget, the Term Sheet, and the terms and conditions proposed as a stipulation for use of cash collateral, and the Court being advised the Debtors wish to withdraw their request for approval of the CFS DIP Loan and instead obtain the relief requested in their Wells Financing Motion, and the Court finding that notice of the Wells Financing Motion is reasonable under the circumstances, and after due consideration and good and sufficient cause appearing therefore,

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. <u>Petition</u>. On the Petition Date, Debtors filed the Petitions and commenced the Cases. Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108. Pursuant to order of this Court, the Debtors' cases are being jointly administered under Case No. 10-10758 ABC.

B. <u>Jurisdiction</u>. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), and (M). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Notice</u>. Under the circumstances, the notice of the First day Motions and the Wells Fargo Financing Motion and the Interim Hearing thereon given to the noticed parties constitutes due and sufficient notice thereof and complies with the applicable Bankruptcy Rules.

D. <u>Consensual Use of Cash Collateral.</u> On January 21, 2010, the Court entered the Stipulated Order Authorizing Consensual Use of Cash Collateral, Granting Adequate Protection and Authorizing Retention of Cash Management Systems, Docket No. 45, (the "Initial Cash Collateral Order"). The terms and conditions of the Cash Collateral Order, including the adequate protection provided to Lender therein, are appropriate and should remain applicable through the conclusion of the Final Hearing on the proposed Final Facility with respect to Debtors' use of existing cash availability and cash collateral proceeds.

E. <u>Debtors' Stipulations</u>. Without prejudice to the rights of any other party (but subject to the limitations thereon in Section 5.1 of this Order), Debtors acknowledge that they have no factual or legal basis to contest that:

(1) *Senior Loan Agreement.* Prior to the Petition Date, Borrower was a party to the Existing Credit Agreement pursuant to which Lender made and Borrower received loans, advances, and other credit accommodations, and Borrower was obligated to Lender for the obligations as set forth therein (the "Senior Obligations");

(2) *Senior Obligations Amount.* As of the Petition Date, the Senior Obligations (a) were not less than the principal amount of $10,966,930.34, plus interest accruing on such amounts, and fees, costs, expenses, and other charges accrued, accruing, or chargeable with respect thereto, (b) constituted legal, valid, and binding obligations of Debtors, and (c) are not subject to any offset, defense, counterclaim, avoidance, or subordination pursuant to the Bankruptcy Code or any other applicable law; and

(3) *Senior Collateral.* As of the Petition Date, (a) the Senior Obligations were secured by the senior liens pursuant to the Existing Credit Agreement ("Senior Liens"), and (b) the Senior Liens constituted valid, perfected, enforceable, and unavoidable first and senior priority security interests and liens in and upon the collateral pledged as described in the loan documentation of the Existing Facility and constituted valid, perfected, enforceable second senior priority liens.

E. Based on the Debtors' representations to date, the Court makes the following findings supporting the Interim Facility including this Order,

(1) *Postpetition Financing.* Debtors have requested the Interim Facility from Lender, and Lender is willing to provide the Interim Facility upon the findings of fact and conclusions of law made herein and upon the terms and conditions of the Term Sheet and related loan documents;

(2) *Need for Postpetition Financing.* Debtors do not have sufficient available sources of working capital to operate its business in the ordinary course of business without the Interim Financing. Debtors' ability to maintain business relationships with its vendors, suppliers, and customers, to pay its employees, and to otherwise fund its operations, is essential

to Debtors' continued viability. The ability of Debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money is vital to the preservation and maintenance of the going concern values of Debtors and to avoid immediate and irreparable harm to Debtors' Estates. Accordingly, Debtors have an immediate need to obtain the proposed interim financing in order to permit, among other tasks, the orderly continuation of the operation of its businesses, to minimize the disruption of its business operations, and to manage and preserve the assets of its estate;

(3) *No Credit Available on Other Terms.* Debtors are unable to procure the same amount of financing as contemplated in the Interim Facility in the form of unsecured credit allowable under section 503(b)(l), as an administrative expense under section 364(a) or (b), or solely in exchange for the grant of an administrative expense priority pursuant to section 364(c)(l) without the grant of liens on its assets pursuant to section 364(c)(2). Debtors have been unable to procure the necessary financing on a timely basis on terms more favorable than the Interim Facility; and

(4) *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Postpetition Financing (as provided in the Loan Documents) are fair, just, and reasonable under the circumstances, are appropriate for secured financing to a debtor in possession, reflect Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the Interim Facility have been negotiated in good faith and at arms' length by and between the parties, with all parties represented by counsel. Any credit extended under the terms of the Interim Facility shall be extended in good faith by Lender as that term is used in 11 U.S.C. § 364(e).

F. <u>Good Cause</u>. The Postpetition Financing and relief requested in the Motion are necessary, essential, and appropriate and are in the best interest of and will benefit Debtors, their creditors, and their Estates as its implementation will, among other effects, provide Debtors with

5

the necessary liquidity (a) to minimize disruption to Debtors' businesses and ongoing operations, (b) to preserve and maximize the value of the Estate for the benefit of all creditors of Debtors, and (c) to avoid immediate irreparable harm to Debtors, their creditors, their businesses, their employees, and their assets.

  G. <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 400l(c)(2).  Objections, if any, that were made are hereby overruled.

  H. <u>Nature of Findings and Conclusions</u>.  If any of the foregoing findings of fact are more properly characterized as conclusions of law, such purported findings of fact are deemed to be conclusions of law, and if any of the foregoing conclusions of law are more properly characterized as findings of fact, such purported conclusions of law are deemed to be findings of fact.

  IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1. <u>Approval of the Cash Collateral Stipulation</u>.  As stipulated and agreed by the parties, the Debtors shall be permitted and authorized to use the cash proceeds (the "Wells Cash Collateral") of the accounts receivable and sales of inventory in the ordinary course securing the Wells Fargo Existing LOC, to pay those expenses set forth in the Budget for the period commencing from the date of this Order through the conclusion of the Final Hearing;

2. <u>Approval of Use of Prepetition Borrowing Base Collateral</u>.  In addition, and as more particularly provided for below, the Debtors may utilize and submit, and Wells Fargo may rely upon and make advances under its Interim Facility in reliance upon, a borrowing base consisting of pre and post petition collateral of the same character and category as that which is collateral for the Wells Fargo Prepetition LOC, including  without limitation, all accounts receivable, inventory, rolling stock, machinery and equipment, real property, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, general intangibles (including tax refunds, customer deposits and security deposits), intellectual property and investment property and that

certain real property supporting the Over advance Facility as defined in the Existing Credit Agreement (the "Prepetition Borrowing Base Collateral").

3. <u>Authorized Use of Cash Collateral, Grant of Adequate Protection Liens, Payment and Security Interests</u>. The Debtors shall be permitted to use such cash availability, the proceeds of prepetition accounts receivable and proceeds from the sales of inventory in the ordinary course of the Debtors' business on the same terms set forth in the Term Sheet and as provided in the Cash Collateral Order. To protect against deterioration in the value of the Wells Cash Collateral and the Prepetition Borrowing Base Collateral, WFB shall be granted a first priority, valid, enforceable, perfected, and unavoidable replacement lien (the "Adequate Protection Lien") on all of Debtors' pre and post-petition collateral of the same type and categories as the Prepetition Borrowing Base Collateral. In addition, WFB shall be provided further adequate in the form of interest only payments on its Senior Obligations. To secure all amounts owing under the Interim Facility, WFD is granted a priming lien against the Prepetition Borrowing Base Collateral, pursuant to 11 U.S.C. § 364 (d)(1); pursuant to 11 U.S.C. § 364 (c)(2), a first priority lien against all unencumbered assets (or assets encumbered by avoidable liens) of the Borrower and JLS; and pursuant to 11 U.S.C. § 364 (c)(1), a subordinate lien against all remaining assets of the Borrower and JLS (excluding all avoidance actions arising under chapter 5 of the Bankruptcy Code or otherwise).

4. <u>No Determination of Prepetition Lien Validity, Extent and Priority</u>. The Adequate Protection Lien shall have the same validity, extent and priority as Wells Fargo's prepetition lien against the Prepetition Borrowing Base Collateral. Nothing in this Order shall be deemed to determine the validity, extent, or priority of WFB's Prepetition Lien.

5. <u>Terms of Cash Collateral Order Remain Applicable</u>. The Debtors use of cash collateral and the Interim Facility loan advances authorized in this order, as well as its use of cash management systems relating to such use, shall remain subject to, and in accordance with, this Initial Cash Collateral Order. The Debtors shall be permitted to use such cash availability, the proceeds of prepetition accounts receivable and proceeds from the sales of inventory in the ordinary course of the Debtors' business, in accordance with the Budget on the same terms set forth in the Term Sheet and as provided in the Cash Collateral Order.

6. <u>Authorization and Conditions to Postpetition Financing</u>.

    6.1 <u>Interim Financing Relief Granted</u>. The Interim Financing described in the Wells Financing Motion, Term Sheet and Budget is granted pursuant to Bankruptcy Rule 4001(c)(2), subject to the terms of this Order.

    6.2 <u>Authorization to Borrow</u>. Debtors are hereby authorized and empowered on an interim basis to immediately obtain the postpetition financing, incur the postpetition obligations under the Interim Facility as set forth in the Budget, including the Debtors' use of cash to provide deposits to credit card issuers providing postpetition credit to the Debtors and use cash collateral pursuant to the terms and conditions of this Order, the Cash Collateral Order, and the Term Sheet.

    6.3 <u>Term Sheet</u>. The Debtors shall be deemed bound by the Term Sheet and all DIP loan advances made by Wells Fargo under this Order and the Term Sheet shall be governed by the Term Sheet and this Order, pending the Final Hearing, including those terms described in the Term Sheet for inclusion in a DIP Loan Agreement or other related documentation.

    6.4 <u>Final Facility Documentation</u>. The parties shall prepare and file by no later than Thursday, January 28, 2010, a proposed DIP Loan Agreement, to govern the Final Facility, and

the Debtors shall identify the docket number of such proposed agreement in their notice of the Final Hearing.

6.5     Perfection of Postpetition Liens. This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Postpetition Liens, effective as of the date and time of entry of this Order, without any further Perfection Act. Notwithstanding the foregoing, if any Wells shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate a Perfection Act, such Wells is authorized to perform such acts, and Debtors are authorized and directed to perform such act to the extent necessary or required by such Wells and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. Any Wells may choose to file, record, or perform a certified copy of this Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act. Should any Wells so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Liens by virtue of entry of this Order.

6.6     Super-Priority Administrative Expense.  Lender shall have a superpriority claim (the "Superpriority Claim") with superpriority in payment afforded by section 364(c)(l), which shall have priority in right of payment over any and all other unsecured obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by Debtors, including without limitation any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 1114, and other sections of the Bankruptcy Code including those resulting from the conversion of any of the Cases pursuant to section 1112, and shall at all times be senior to the rights of Debtors, or any creditor or other party in interest in the Cases or any subsequent proceedings under the Bankruptcy Code; provided however, the Superpriority Claim shall be subject, junior and subordinate to the (i) Carve Out Amount, (ii) Prepetition Liens that were senior to the Senior

9

Liens as of the Petition Date, (iii) Postpetition Adequate Protection Liens that relate to Prepetition Liens that were senior to the Senior Liens as of the Petition Date, and (iv) the fees and expenses of any Chapter 7 trustee.

6.6   <u>Closing Date of Interim Facility</u>.  The closing on the Interim Facility will take place immediately upon entry of an Interim Order the Interim Facility (the "Interim Order"), in form satisfactory to Lender.  The Final Facility shall close immediately upon entry of the Final Order approving the Final Facility, in form satisfactory to Lender.  Both the Interim and Final Orders shall include findings of good faith pursuant to Section 364(e).

6.7   <u>Maturity Date of Interim Facility</u>.  The Interim Facility will mature on the earlier of (i) entry of the Final Order approving the Final Facility; (ii) the Effective Date of a confirmed Plan of Reorganizaiton, (iv) the date on which the Bankruptcy Court approves a sale of all or substantially all of the Borrower's and JLS's assets pursuant to Section 363 of the Bankruptcy Code, (v) the date that is 45 days after the Petition Date if the Final Order shall not have been entered by the Bankruptcy Court on or before such date, and (vi) the date of any accelerated maturity due to an event of default under the Interim Facility.

6.8   <u>Events of Default</u>.  The following shall constitute an event of default under the Interim Facility, pending entry of a Final Order: (i) the entry of an order dismissing the Bankruptcy Case or converting the Bankruptcy Case to a chapter 7 case, (ii)  the entry of an order granting any other claim super-priority status or a lien equal or superior to that granted to the Bank in Pre and Postpetition Collateral, (iii) the filing of any pleading seeking to stay, reverse, vacate or otherwise modify any of the DIP Documents without the prior written consent of the Bank, (iv) a Final financing Order is not entered within 45 days after the Petition Date, (v) the failure of Borrower to pay (a) interest or fees when due under the Credit Facilities and such default shall continue for two business days, or (b) principal, if any, when due, (vi) the failure of Borrower to comply with any negative covenants or any other obligation or provision of the DIP Documents, (vii) the consolidation or combination of Borrower with any other person (other than

Borrower) except pursuant to a confirmed plan of reorganization as contemplated in the plan of reorganization, (viii) the failure of Borrower to perform or comply with any term or covenant of the DIP Documents and such default shall continue unremedied for a period of 10 calendar days, (ix) any representation warranty, or financial information provided by Borrower shall be incorrect or misleading in any material respect when made, (x) a variance in a weekly Budget of more than 15%; (xi) the Borrower or JLS seeking the extension of the exclusivity period unless otherwise consented to by Bank in writing in its sole discretion; (xii) the entry of an contested order in the Bankruptcy Case granting relief from the automatic stay of 11 U.S.C. § 362 to any party in interest or holder or holders of a lien or security interest on any portion of Bank's prepetition collateral or postpetition collateral (collectively, "Bank's Collateral") or on any assets of Borrowers' necessary to the continuing operations and ability to perform the Budget and repay the DIP Facilities allowing such party to foreclose or otherwise realize upon such liens or security interests, (xiii) the sale of Bank's Collateral (other than Inventory in the ordinary course of Borrower's business) without final and indefeasible payment to Bank of the total Prepetition Obligations defined below) in cash or other immediately available funds and (xiv) there occurs a material adverse change in the assets, business, financial condition, income or prospects of the Borrower and JLS since the Petition Date.

      6.9    <u>Rights and Remedies Upon Event of Default or Termination Event</u>. Upon the occurrence and during the continuation of an Event of Default or Termination Event, a) Debtors shall remain bound by all restrictions, prohibitions, and other terms as provided in this Order and the Term Sheet; b) Lender shall have no obligation to make advances or provide other financial accommodations, or otherwise perform its obligations under the Term Sheet; c) lender's consent to the use of cash collateral and the Borrowing Base Collateral shall be deemed terminated; and the lender may apply for relief from stay and other appropriate remedies on 10 days notice.

      6.10    <u>Binding Effect</u>. This Order shall be binding upon Debtors, all parties in interest in the Cases, and their respective successors and assigns, including any trustee or other fiduciary

appointed in the Case or any subsequently converted bankruptcy case(s) of Debtors. This Order shall also inure to the benefit of Lender, Debtors, and their respective successors and assigns. The provisions of this Order and the Loan Documents, and the Postpetition Liens, Obligations, Superpriority Claim, 507(b) Claim, and any and all rights, remedies, privileges, interests, and benefits in favor of Lender provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 4001 and 7062, shall continue in full force and effect, and shall survive entry of any other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Cases to any other chapter under the Bankruptcy Code, or dismissing the Cases. Any order dismissing the Case under section 1112 or otherwise shall provide by virtue of this Order (in accordance with sections 105 and 349) that (a) the Superpriority Claim, determining any 507(b) Claim, the Postpetition Liens and the rights of the Professionals in the Carve Out Account shall continue in full force and effect to the greatest extent permitted by applicable law, notwithstanding such dismissal, until the Obligations are paid and satisfied in full, and (b) this Court shall retain jurisdiction to the fullest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the 507(b) Claim, the Postpetition Liens, the Carve Out Account, and the rights, privileges, interests, and benefits provided or acknowledged in this Order.*******

      6.11.   <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any Loan Document and this Order, the terms and provisions of this Order shall control.

      7.   <u>Final Hearing and Response Dates</u>.  The Final Hearing on the Wells Fargo Financing Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____, at _____ before this Court.  Debtors shall promptly mail copies of this Order to the parties identified in the Court's Order Limiting Notice.

DATED this ___ day of January 2010.

BY THE COURT:

_____
U.S. Bankruptcy Judge

STIPULATED AND AGREED TO:

*/s/ Jack L. Smith*
Jack L. Smith, #2640
Risa Lynn Wolf-Smith, #15835
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone:  303-295-8246; 303-295-8011
Facsimile:  303-295-8261
E-mail: jsmith@hollandhart.com;
rwolf@hollandhart.com
and
Bruce W. Leaverton, WSBA #15329
Mary Jo Heston, WSBA #11065
Appearing pro hac vice
LANE POWELL PC
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
E-mail: Leavertonb@lanepowell.com
Hestonm@lanepowell.com
**ATTORNEYS FOR MOVANT, WELLS FARGO BANK, NATIONAL ASSOCIATION, WELLS FARGO EQUIPMENT FINANCE, INC. WACHOVIA FINANCIAL SERVICES, INC., A/K/A/ FIRST UNION COMMERCIAL CORPORATION**

*s/ Harvey Sender*
Harvey Sender, #7546
John B. Wasserman, #10011
SENDER & WASSERMAN PC
1660 Lincoln Street, Ste. 2200
Denver, CO 80264
**ATTORNEYS FOR THE DEBTORS**

4711745_1.DOC