UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUNDAGE-BONE | ) | Case No. 10-10758-ABC |
| CONCRETE PUMPING, INC. | ) | Chapter 11 |
| EIN: 84-0972141 | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | Case No. 10-10760-ABC |
| JLS CONCRETE PUMPING, INC. | ) | Chapter 11 |
| EIN: 84-0972141 | ) | |
| | ) | *Jointly Administered Under* |
| Debtor. | ) | *Case No. 10-10758 ABC* |

**AMENDED MOTION FOR FINAL ORDER APPROVING DEBTOR-IN-POSSESSION FINANCING, USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**

BRUNDAGE-BONE CONCRETE PUMPING, INC. ("Brundage-Bone" or "Borrower") and JLS CONCRETE PUMPING, INC. ("JLS") (Brundage-Bone and JLS are hereinafter sometimes collectively referred to as the "Debtors"), by and through their counsel, Sender & Wasserman, P.C., hereby submit their Amended Motion for Final Order Approving Debtor-in-Possession Financing, Use of Cash Collateral and Adequate Protection. In support of the Motion, the Debtors state as follows:

**Introduction**

1. On January 25, 2010, the Debtors and Wells Fargo Bank, National Association ("Wells Fargo" or "Bank") reached agreement as to an interim debtor in possession financing agreement and submitted to the Bankruptcy Court their proposed Stipulated Interim Order Under 11 U.S.C. §§ 361, 362, 363 and 364, Fed.R.Bankr.P. 4001, and Bankr.L.R. 4001-2, (A) Authorizing Debtors to Incur Postpetition Indebtedness, (B) Granting Security Interests and Superpriority Expense Claims, (C) Authorizing Use of Cash Collateral and (D) Granting Other Relief (the "Interim Financing Order"). On January 26, 2010, the Court approved the Interim Financing Order with modifications.

2. Subsequent to entry of the Interim Financing Order, the Debtors and Wells Fargo worked diligently to negotiate the terms of a final debtor in possession financing agreement. By this Motion, the Debtors seek final approval (the "Final Order") of the debtor in possession loan agreement with Wells Fargo attached hereto as <u>Exhibit 1</u> and incorporated herein by this

reference (the "DIP Loan"). The proposed DIP Loan will preserve the Debtors' business for the benefit of all parties.

### Debtors' Operations and Need for Post-Petition Financing and Wells Fargo's Willingness to Lend

3.  On January 18, 2009 (the "Petition Date"), each of the Debtors filed a petition with the Court under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 19, 2010, the Court ordered the joint administration of the Chapter 11 Cases.

4.  Brundage-Bone, together with JLS, is the largest provider of concrete pumping equipment and operators in the United States. The Debtors provide concrete pumping equipment to commercial and residential customers on primarily a short-term hourly rental basis. In addition to their core concrete pumping services, Brundage-Bone is an authorized dealer of Putzmeister concrete pumps and parts. Brundage-Bone also sells spare parts and service to other concrete pumping companies.

5.  Prior to the Petition Date, Brundage-Bone maintained its primary banking relationship with Wells Fargo, including a revolving line of credit (the "Line of Credit") which, as of January 18, 2010, had an outstanding balance of approximately $11,000,000 (including standby letters of credit supporting the Debtors' commercial insurance deductible obligations), equipment lines of credit in the amount of approximately $35,500,000, and various term loans in the amount of approximately $6,400,000 (collectively, the "Wells Fargo Loans"). The Debtors also have loans and leases with 20 other lending and leasing institutions representing approximately $250 million in aggregate obligations (collectively with the Wells Fargo Loans, the "Outstanding Loans").

6.  Since the onset of the worldwide financial crisis in 2008, the Debtors have seen their annual revenues decline from over $200 million for fiscal year 2008 to under $120 million for fiscal year 2009. As revenues declined, the Debtors worked diligently to reduce operating and administrative costs.

7.  Notwithstanding their efforts at cost reductions and efficiencies, the Debtors were unable to meet various fixed coverage ratios and other payment term provisions under their Outstanding Loans. In July 2009, the Debtors entered into various restructuring and forbearance agreements with their lenders, including Wells Fargo (collectively, the "Forbearance Agreements"). Pursuant to the Forbearance Agreements, the Debtors' lenders under the Outstanding Loans agreed to forbear from exercising remedies under the Outstanding Loans until December 31, 2009, while the Debtors attempted to formulate and implement a business plan to enhance net revenues and implement costs savings and right-sizing measures. The Debtors attempted to obtain amendment from its prepetition lenders that would continue a forbearance period until February 1, 2010. As a prerequisite to any one lender granting the extension, certain lenders conditioned their willingness upon all other lenders agreeing to the same extension. The

2

Debtors were unable to obtain all necessary consents during the short period allowed and the forbearance period expired by its terms.

8. The Debtors have funded operations since January 26, 2010 pursuant to the Interim Financing Order.

## Summary of Material Provisions

9. A copy of the proposed DIP Loan agreement is attached hereto as <u>Exhibit 1</u>. The proposed Final Order is also filed with the Motion. A summary of the material terms of the agreement and proposed Final Order, together with identification of the specific locations of the terms, in accordance with Fed.R.Bankr.P. 4001(c)(B) and Local Rule 4001-3, is as follows:

| **Borrowing Limits**: | |
|---|---|
| <u>Exhibit 1</u>, p. 4, § 1.1; p. 40, Definitions. <u>Exhibit 2</u>, pp. 1-2. | $15,000,000, evidenced by DIP Line of Credit Note (the "Note," attached hereto as <u>Exhibit 2</u>). |
| <u>Exhibit 1</u>, pp. 4-5, § 1.2. | Outstanding Advances under the DIP Loan will be limited to the lesser of (i) the Revolving Loan Commitment, or (ii) the sum of (a) 80% of the Eligible Accounts Receivable of each of Borrower and JLS existing as of the Petition Date and Eligible Accounts Receivable coming into existence thereafter, (b) 50% of the value of Borrower's spare parts inventory (exclusive of work in process and inventory which is obsolete, unsaleable or damaged) as deemed eligible by Bank, and (c) $4,000,000, less the sum of (x) such reserves to be reasonably established by Bank, and (y) the Borrowing Base Obligations. The value of the spare parts inventory shall be calculated at the lesser of cost or market value. |
| <u>Exhibit 1</u>, p. 6, § 1.4. | The DIP Loan will be used for (i) ongoing working capital needs of the Debtors, including but not limited to, the payment of court-approved Professional fees and expenses, incurred during the Bankruptcy Cases, arising after the Petition Date, all in accordance with and as limited by the Budget; and (ii) payment in full of all amounts outstanding on the Interim Facility and Line of Credit Obligations. The initial Advance under the DIP Loan shall be used to pay all amounts outstanding on the Interim Facility and the Line of Credit Obligations. |
| **Borrowing Conditions**: | |
| <u>Exhibit 1</u>, p. 7, § 1.6(e). | Upon the entry of the Final Financing Order, Borrower will pay Bank an additional fully-earned and non-refundable facility fee of $75,000. |

3

| | |
|---|---|
| <u>Exhibit 1</u>, pp. 11-12, § 3.1. | The obligation of Bank to extend any credit contemplated by this Addendum is subject to the fulfillment to Bank's satisfaction of all of the following conditions:<br><br>(1) Each Bankruptcy Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof and proper notice of the hearing to consider entry of the Final Financing Order has been given.<br><br>(2) After the entry of the Final Financing Order, the obligations owing under the DIP Loan will constitute allowed administrative expense claims in the Bankruptcy Cases having Superpriority Status, subject only to the Carve Out.<br><br>(3) After the entry of the Financing Orders, the Postpetition Obligations will be secured by a valid and perfected Lien on all of the Postpetition Collateral and such Lien shall have the priorities set forth in the applicable Financing Order and the other DIP Loan Documents.<br><br>(4) The Financing Orders (with respect to the period on and after entry of the applicable Financing Order), as the case may be, are in full force and effect and have not been reversed, stayed, modified, varied or amended without the consent of Bank.<br><br>(5) Notwithstanding any failure on the part of Bank to perfect, maintain, protect or enforce any Lien in the Postpetition Collateral granted pursuant to the DIP Loan Documents or the Financing Orders, the Financing Orders (when entered) shall independently and automatically, and without further action by any Person perfect such Postpetition Liens against the Postpetition Collateral.<br><br>(6) No Default or Event of Default shall have occurred under the Interim Facility and be continuing.<br><br>(7) Bank shall have received, in form and substance satisfactory to Bank, each of the following, duly executed (unless Bank waives delivery of such item as a requirement to extend credit): (i) the Addendum; (ii) the DIP Line of Credit Note; (iii) Corporate Resolution: Borrowing (Borrower); (iv) Certificate of Incumbency (Borrower); (v) Continuing Guarantee (JLS); (vi) Continuing Security Agreement - Rights to Payment and Inventory (JLS); (vii) Security Agreement – Equipment (JLS); (viii) Corporate Resolution: Guarantee and Pledge of Collateral (JLS); (ix) Certificate of Incumbency (JLS); and (x) such other documents as Bank may require under any other Section of this Addendum. |

4

| | |
|---|---|
| | (8) No event shall have occurred that will have a Material Adverse Effect on the financial condition or business of Borrower or JLS since the Petition Date, nor shall there have been any material decline in the market value of any Collateral.<br><br>(9) Debtors shall have delivered to Bank evidence of insurance coverage on all Debtors' property, in form, substance, amounts, covering risks and issued by companies satisfactory to Bank, and where required by Bank, with loss payable endorsements in favor of Bank, including without limitation, policies of fire and extended coverage insurance covering all real property collateral required hereby, with replacement cost and mortgagee loss payable endorsements, and such policies of insurance against specific hazards affecting any such real property as may be required by governmental regulation or Bank. |
| <u>Exhibit 1</u>, p. 12, § 3.2. | The obligation of Bank to make each extension of credit requested by Borrower shall be subject to the fulfillment to Bank's satisfaction of the each of the following conditions:<br><br>(1) The Final Financing Order shall be in full force and effect.<br><br>(2) No Default or Event of Default shall have occurred under the DIP Loan Documents and be continuing.<br><br>(3) No event shall have occurred that will have a Material Adverse Effect in the financial condition or business of Borrower or JLS since the Petition Date, nor shall there have been any material decline in the market value of any Collateral. |
| **Interest Rate**: | |
| <u>Exhibit 2</u>, p. 2. | The outstanding principal balance of the Note shall bear interest (computed on the basis of a 360-day year, actual days elapsed) at a fluctuating rate per annum determined by Bank to be four and one half percent (4.5%) above the Daily One Month LIBOR Rate in effect from time to time. |
| **Maturity**: | |
| <u>Exhibit 1</u>, p. 36, Definitions. | The earlier of (i) the date that is 180 days after the Petition Date; (ii) the effective date of a confirmed Plan of Reorganization; (iii) the date on which the Bankruptcy Court approves a sale of all or substantially all of the Borrower's and JLS' assets pursuant Section 363 of the Bankruptcy Code; and (iv) the date of any accelerated maturity due to |

5

|  | an Event of Default under the DIP Loan Documents |
|---|---|
|  |  |
| **Events of Default**: |  |
| Exhibit 1, pp. 23-24, § 5.1. | (3) The failure of Borrower to pay (i) interest, fees, or other amounts when due under the DIP Loan Documents or Financing Orders and such default shall continue for two business days, or (ii) principal, if any, when due; <br><br>(4) the entry of an order dismissing either of the Bankruptcy Cases or converting either of the Bankruptcy Cases to a chapter 7 case; <br><br>(5) the entry of an order granting any other claim Superpriority Status or a Lien equal or superior to that granted to Bank in Prepetition Collateral and Postpetition Collateral; <br><br>(6) the filing of any pleading seeking to stay, reverse, vacate or otherwise modify any of the Term Sheet, DIP Loan Documents or the Financing Orders without the prior written consent of the Bank; <br><br>(7) the failure of Borrower or JLS to comply with any negative covenants or any other obligation or provision contained in any DIP Loan Document or in any Financing Order; <br><br>(8) the consolidation or combination of Borrower with any other Person (other than JLS) except pursuant to a confirmed Plan of Reorganization as contemplated in the Plan of Reorganization; <br><br>(9) the failure of the Debtors to perform or comply with any other term or covenant contained in any of the DIP Loan Documents or any Financing Order and such default shall continue unremedied for a period of 10 calendar days; <br><br>(10) any representation, warranty, or financial information provided by Borrower, JLS or any Guarantor shall be incorrect or misleading in any material respect when made; <br><br>(11) an aggregate negative variance in a weekly Budget of more than 15%; <br><br>(12) either Borrower or JLS seeking the extension of the exclusivity period unless otherwise consented to by Bank in writing in its sole discretion; <br><br>(13) the entry of a contested order in the Bankruptcy Case granting relief from the automatic stay of 11 U.S.C. § 362 to any party in |

6

|   |   |
|---|---|
|   | interest or holder or holders of a Lien or security interest on any portion of Collateral or on any other assets of either Debtor without a finding that the assets which are the subject of such Bankruptcy Order are not necessary to a successful reorganization and the Debtor's continuing operations and ability to perform the Budget and repay the Borrowing Base Obligations, allowing such party to foreclose or otherwise realize upon such Liens or security interests;<br><br>(14) the sale of Collateral (other than inventory in the ordinary course of the Debtor's business) without delivery of the net proceeds therefrom to the holders of the Liens thereon, in the order of priority of such Liens; or<br><br>(15) there occurs an event that has a Material Adverse Effect. |

**Grant of Priority or Lien on Property of the Estate under § 364(c) or (d)**:

**Providing of Adequate Protection or Priority for Claim that Arose Prepetition, Including Granting of Lien on Estate Property or the Use of Estate Property or Credit Obtained Under § 364 to Make Cash Payments on Account of the Claim**:

|   |   |
|---|---|
| Exhibit 1, pp. 7-8, § 1.8(b).<br><br>Final Order, pp. 9-11, § 3.1.1; § 3.1.3.1; § 3.1.3.2; § 3.1.3.3; § 3.1.3.4; § 3.2; | As security for all the Postpetition Obligations, Borrower and JLS each grant to Bank (i) a first priority Lien upon and security interest in all of Borrower's and JLS's prepetition and postpetition existing and future acquired assets and the proceeds and products thereof of the same character and category as are subject to the Prepetition Liens securing the Prepetition Obligations; (ii) a priming Lien against the Borrowing Base Collateral, pursuant to 11 U.S.C. § 364(d)(1); (iii) pursuant to 11 U.S.C. § 364(c)(2), a first priority Lien against all unencumbered assets (or assets encumbered by avoidable Liens) of Borrower and JLS; and (iv) pursuant to 11 U.S.C. § 364(c)(1), a subordinate Lien against all remaining assets of Borrower and JLS (in each case excluding Avoidance Claims). |
| Final Order, at p. 9, § 3.1.2. | Bank shall have and is also hereby granted a Postpetition Adequate Protection Lien on all of the Collateral as additional Adequate Protection. |
| Final Order, at p. 9, § 3.1.3. | The Postpetition Liens shall be and shall continue to be at all times first and senior in priority to all other interests and liens of every kind and nature, whether created consensually, by an order of any court including this Court, or otherwise, including without limitation liens or interests granted in favor of any other person or entity in conjunction with section 363, 364, or any other section of the Bankruptcy Code; provided, however, that the Postpetition Liens shall not prime and shall in all respects be subject, junior and subordinate to the (i) Carve |

7

| | |
|---|---|
| | Out Amount; (ii) those prepetition liens of Other Secured Creditors that were senior as of the Petition Date to the Prepetition Liens (including any validly perfected prior statutory liens and Permitted Liens) to which such Postpetition Liens relate; and (iii) statutory liens perfected postpetition in accordance with Section 3.1.4 of this Order. Except for the priming lien pursuant to which the Bank's Post petition Liens shall prime the Bank's Prepetition Liens, no Other Secured Creditors' liens are being primed pursuant to the terms of this Final Financing Order. |
| | |
| Final Order, p. 14, § 3.4 | Bank shall have an allowed superpriority administrative claim in accordance with Section 507(b) of the Bankruptcy Code as further Adequate Protection for the Debtors use of Cash Collateral and for the Post Petition Financing. |
| | |
| **Determination of the Validity, Enforceability, Priority, or Amount of a Claim that Arose Prepetition or of Any Lien Securing the Claim**: | |
| Exhibit 1, p. 7, § 1.8(a). | Each Debtor reaffirms and ratifies all security interests granted in the Prepetition Financing Agreements and related security agreements, deeds of trust, pledge agreements, and other loan documents, and confirms that said security interests and Prepetition Liens continue to secure the Prepetition Obligations. |
| | |
| Exhibit 1, p. 9, § 2.7. | The Debtors acknowledge that, as of the Petition Date, (i) the Prepetition Obligations were due and outstanding pursuant to the Prepetition Credit Agreement in the principal amount of not less than $52,942,485.96 in the aggregate, all of which Prepetition Obligations are unconditionally owing by Borrower to Bank, without offset, defense or counterclaim of any kind, nature and description whatsoever; (ii) neither Borrower nor any of its Subsidiaries has any defense to, set off, counterclaim or other basis to challenge the Prepetition Obligations; (iii) the Prepetition Obligations are secured by valid, perfected Liens, on all of the Prepetition Collateral; (iv) the Prepetition Liens encumbering the Prepetition Collateral are not avoidable in any way; (v) performance of all the Prepetition Obligations are cross collateralized and secured by all of the Prepetition Collateral and (vi) the Prepetition Obligations and the Prepetition Liens are not subject to subordination in favor of any other Person on any basis except as specifically provided in the Prepetition Credit Agreement or in any Intercreditor Agreement. |
| | |
| **Waiver or Modification of Code Provisions Relating to the Automatic Stay**: | |
| | |
| Final Order, at 4.3. | The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the Court or by law are hereby |

8

modified and vacated without further notice, application, or order of the Court to the extent necessary to permit Bank to perform any act authorized or permitted under or by virtue of this Final Financing Order as follows:

(a) Effective immediately (i) to implement the Postpetition Financing pursuant to the terms of this Final Financing Order and the DIP Loan Documents other than exercising rights or remedies available upon an Event of Default, (ii) to take any act to create, validate, evidence, attach, or perfect the Postpetition Liens, including without limitation, entering into Cash Management Agreements, and (iii) to assess, charge, advance, deduct, and receive payments with respect to the Obligations including Bank Expenses, and apply such payments to the Obligations pursuant to the DIP Loan Documents and this Final Financing Order, and

(b) Upon the occurrence of and during the continuation an Event of Default consistent with any notice and cure periods provided in the applicable DIP Loan Documents, as follows:

> (i) To take certain actions and exercise certain rights available upon the occurrence and during the continuation of an Event of Default as provided in this Final Financing Order and/or the DIP Loan Documents other than enforcing rights and remedies in connection with the Collateral, including without limitation terminating and withholding their consent to Debtors' use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide financial accommodations to or on behalf of Debtors including Letters of Credit, and terminating the commitment of Bank to provide any further advances and financial accommodations to or for the benefit of Debtors (all subject to the rights of the Professionals to receive payment from the Carve Out Amount); and

> (ii) To take any action and exercise all rights and remedies as provided in this Final Financing Order and/or the DIP Loan Documents (consistent with any cure periods and notice requirements, if any, provided in the Addendum) with respect to the Collateral and/or terminating Debtors' use of Bank's Cash Collateral other than the Carve Out Amount, in each case effective upon further order of the Court granting relief from any applicable stay or injunction to be heard on an expedited basis on not less than ten (10) days notice to counsel for Debtors, counsel for the Committee, counsel to any other committee appointed by the Court and the United States Trustee, with Bank reserving all rights to seek such relief earlier upon the

|  | appropriate showing. |
|---|---|
| **Waiver or Modification of any Party's Right to File a Plan, Seek an Extension of Exclusivity, Request Use of Cash Collateral Under § 363(c) or Request Authority to Obtain Credit under § 364**: | |
| <u>Exhibit 1</u>, p. 23, § 5.1(j). | An "Event of Default" includes either Borrower or JLS seeking the extension of the exclusivity period unless otherwise consented to by Bank in writing in its sole discretion. |
| <u>Exhibit 1</u>, p. 21, § 4.32; p. 32, Definitions. | Under no circumstances may the Debtors use Advances or proceeds of the Collateral to pursue any Adverse Action.<br><br>"Adverse Action" is defined to include any negotiation, solicitation or attempt to obtain postpetition loans or other financial accommodations (other than indebtedness permitted under the DIP Loan Documents or which would pay all the Line of Credit Obligations in full) pursuant to <u>Section 364(c)</u> or <u>(d)</u> other than from Bank or such other party without Bank's consent. |
| <u>Exhibit 1</u>, p. 22, § 4.33(i). | Upon and in the event of the termination of Bank's commitment to make Advances or provide financial accommodations hereunder, unless Bank has received the full and final payment and satisfaction of all Borrowing Base Obligations (other than the Contingent Obligations that have been collateralized to the satisfaction of the Bank), neither Debtor shall request or support any request for the use of Collateral or Cash Collateral pursuant to Section 363 of the Bankruptcy Code or other applicable law, under any circumstance without Bank's further express, written consent. |
| <u>Exhibit 1</u>, p. 22, § 4.33(j). | Neither Debtor shall file a Plan of Reorganization and related disclosure statement with the Bankruptcy Court unless such disclosure statement and Plan of Reorganization provides for the indefeasible payment in full to Bank of all Borrowing Base Obligations (other than the Contingent Obligations that have been cash collateralized to the satisfaction of the Bank) on the effective date of such Plan of Reorganization, or otherwise, or otherwise provides treatment of Bank's claim under the Plan of Reorganization satisfactory to Bank in its sole discretion. |
| **Waiver or Modification of the Applicability of Nonbankruptcy Law Relating to the Perfection of a Lien on Estate Property, or on the Foreclosure or Other Enforcement of the Lien**:<br><br>**Release, Waiver, or Limitation on Any Claim or Other Cause of Action Belonging to the Estate or the Trustee, Including any Modification of the Statute of Limitations or Other** | |

10

| **Deadline to Commence an Action**: | |
|---|---|
| Exhibit 1, p. 9, § 2.7. | The Debtors acknowledge that (i) Prepetition Obligations are secured by valid, perfected Liens, on all of the Prepetition Collateral; (ii) the Prepetition Liens encumbering the Prepetition Collateral are not avoidable in any way; and (iii) the Prepetition Obligations and the Prepetition Liens are not subject to subordination in favor of any other Person on any basis except as specifically provided in the Prepetition Credit Agreement or in any Intercreditor Agreement; provided, however, that this acknowledgment, confirmation and agreement shall not impair prohibit or otherwise affect any Committee's right to prosecute an Adverse Action subject to the terms of this Addendum and subject to the Financing Orders. The Final Financing Order shall contain a provision that requires that any party in interest commence an Adverse Action within 90 days of the entry of the Final Financing Order or be forever barred from commencing such an action. |
| | |
| Exhibit 1, pp. 19-20, § 4.30. | (1) Effective upon entry of the Final Financing Order and subject to the terms of the Financing Orders, each Debtor acknowledges, confirms and agrees that it has no defense, counterclaim, offset, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of each Debtor's liability to repay Bank or to seek affirmative relief or damages of any kind or nature from Bank.  Each Debtor, together with all its successors, assigns, subsidiaries and affiliates (collectively, the "Releasing Parties"), hereby fully, finally and forever releases and discharges Bank (including in its capacity as pre-petition lender) and all of each of such party's past and present officers, directors, agents, attorneys, assigns, heirs, parents, subsidiaries, and each person acting for or on behalf of any of them (collectively, "Released Parties") of and from any and all past, present, causes of action, demands, suits, claims, liabilities, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including without limitation those arising under 11 U.S.C. §§ 541-550 and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct or indirect, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing occurring at or from any time prior to and including the date hereof in any way, directly or indirectly |

11

| | |
|---|---|
| | arising out of, connected with or relating to the Prepetition Credit Agreement, Prepetition Obligations and the transactions and loan documents contemplated hereby, and all other agreements, certificates, instruments and other documents and statements related to any of the foregoing. Effective upon the execution hereof, and notwithstanding any failure of any Debtor to satisfy any of the conditions precedent set forth herein, the Releasing Parties hereby agree that, without any further act, Bank, together with each of its officers, directors, employees, counsel, agents, and attorneys in fact, are fully and forever released and discharged from any and all claims for damages or losses to the Releasing Parties (whether these damages or losses are known or unknown, foreseen or unforeseen, or patent or latent) including, without limitation, tort claims, demands, actions and causes of action of any nature, whatsoever arising under or relating to the Prepetition Credit Agreement, Prepetition Obligations, or any of the transactions related thereto, prior to the date hereof. Solely to the extent California law is applicable, the Releasing Parties waive application of California Civil Code Section 1542 and certify that they have read the following provisions of California Civil Code Section 1542:<br><br>A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.<br><br>(2) Each Releasing Party, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Released Party that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Released Party on the basis of any claim released, remised and discharged by any Released Party pursuant to this Section 4.30. If any Releasing Party violates the foregoing covenant, the Releasing Parties agree to pay, in addition to such other damages as any Released Party may sustain as a result of such violation, all attorneys' fees and costs incurred by any Released Party as a result of such violation.<br><br>(3) Notwithstanding any other term or provision contained herein, nothing contained in this Section 4.30 shall impair, prohibit, or otherwise affect any Committee's right to prosecute an Adverse Action except to the extent such right may be limited by the terms of the Financing Orders. |
| | |
| <u>Exhibit 1</u>, p. 21, § 4.32; | Under no circumstances may the Debtors use Advances or proceeds of |

12

| | |
|---|---|
| p. 32, Definitions. <u>Final Order</u>, p. 17, § 5.2. | the Collateral to pursue any Adverse Action.  The foregoing shall not be construed as a consent to the allowance of any reasonable fees and expenses referred to above and shall not affect the right of Bank to object to the allowance and payment of such amounts.<br><br>"Adverse Action" is defined as (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination, finding or similar relief: (i) challenging or contesting the legality, validity, priority, amount or enforceability of the Obligations, or (ii) challenging or contesting the legality, validity, priority or enforceability, or seeking to invalidate, set aside, avoid or subordinate, in whole or in part, any Lien or interest in favor of  Bank or in the Collateral, (b) a request to use the Cash Collateral without Bank's consent, except as provided herein, (c) any negotiation, solicitation or attempt to obtain postpetition loans or other financial accommodations (other than indebtedness permitted under the DIP Loan Documents or which would pay all the Line of Credit Obligations in full) pursuant to <u>Section 364(c)</u> or <u>(d)</u> other than from Bank or such other party without Bank's consent, or (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Bank, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns or successors, including without limitation any attempt to recover on an Avoidance Claim from any such party. |
| | |
| <u>Exhibit 1</u>, p. 22, § 4.33(g). | The Debtors shall not make any payments or transfers of any property on account of claims asserted by any vendors of either Debtor for reclamation in accordance with Section 2-702 of any applicable UCC and Section 546(c) of the Bankruptcy Code, unless otherwise ordered by the Court. |
| | |
| <u>Exhibit 1</u>, p. 22, § 4.33(h). | Debtors shall not return any inventory to any vendor pursuant to Section 546(g) of the Bankruptcy Code, unless otherwise ordered by the Bankruptcy Court. |
| | |
| <u>Exhibit 1</u>, p. 22-23, § 4.34. | This Addendum does not extinguish or otherwise impair the obligations, including, without limitation, obligations for the payment of money outstanding under the Prepetition Financing Agreements, the August 2004 Term Loan Agreements and related loan documents, or discharge or release the obligations or the Liens or priority of any mortgage, pledge, security agreement or any other security therefor, which shall continue without interruption and in full force and effect. For avoidance of doubt, except as set forth in this Addendum and except for the payment of the DIP Loan and the release of Liens on |

| | |
|---|---|
| | Borrowing Base Collateral (i) the Prepetition Obligations shall be governed by the terms, conditions and agreements set forth in the Prepetition Financing Agreements and related loan documents, (ii) August 2004 Term Loan shall be governed by the terms, conditions and agreements set forth in the August 2004 Term Loan Agreements and related loan documents and (iii) nothing expressed or implied in this Addendum shall be construed as a release or other discharge of either Debtor or any other obligor from any of their obligations or liabilities under the Prepetition Financing Agreements, August 2004 Term Loan Agreements, or any of the security agreements, deeds of trust, pledge agreements, guaranties, or other loan documents executed in connection therewith. |
| | |
| Final Order, p. 11-12, § 3.1.4. | The Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Postpetition Liens, effective as of the date and time of entry of this Final Financing Order, without any further Perfection Act. Notwithstanding the foregoing, if the Bank shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate a Perfection Act, the Bank is authorized to perform such acts, and Debtors are authorized and directed to perform such act to the extent necessary or required by the Bank and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. Notwithstanding any provision of this Final Financing Order or the DIP Loan Documents to the contrary, to the extent any party in interest (including the Bank) is authorized by statute to perfect a lien post-petition and such statute affords such party in interest or secured party seniority position, nothing contained herein or in the DIP Loan Documents shall be deemed to alter, modify or amend such statutory authorization. The Bank may choose to file, record, or perform a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act. Should the Bank so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Liens by virtue of entry of this Final Financing Order. |
| | |
| Final Order, p. 16, § 5.1. | Prepetition Claim Objections, if any, shall be filed with the Court by the Committee or any other party in interest in the Bankruptcy Cases with the requisitie standing on or before the later of May 29, 2010 or 90 days following the Bankruptcy Court's entry of the Final Financing Order. If no Prepetition Claim Objection is timely filed or if a Prepetition Claim Objection is timely filed but denied, (i) the Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of |

| | |
|---|---|
| | any kind by Debtors or any other party, and shall not be subject to any further objection or challenge by Debtors or any other party at any time, and the Prepetition Liens shall be deemed legal, valid, perfected, enforceable, and unavoidable for all purposes and of first and senior priority subject to only the Permitted Liens and Claims that had priority over such Prepetition Liens, and (ii) Bank and its respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Financing Agreements, the Prepetition Liens or Prepetition Collateral and shall not be subject to any further objection, challenge, or action by any party at any time. To the extent either the Prepetition Obligations, the Prepetition Liens, or any claim on behalf of Bank relating thereto are disallowed in whole or in part by the Bankruptcy Court, any disallowance in whole or in part of either the Prepetition Obligations, the Prepetition Liens, or any claim on behalf of Bank relating thereto shall not affect Banks' right (to the extent such a right exists) to collect such amounts due from any person or entity other than the Debtors. |
| **Indemnification of Any Entity**: | |
| Exhibit 1, p. 28, § 6.15 | Each Debtor hereby agrees to indemnify and hold harmless Bank and its officers, directors, employees, attorneys and agents (each an "Indemnified Party") from, and holds each of them harmless against, any and all losses, liabilities, obligations, claims, actions, proceedings, demands, damages, penalties, costs and expenses (including attorney's fees) and any payments made by Bank pursuant to any indemnity provided by any such Person with respect to or to which any Indemnified Party could be subject insofar as such losses, liabilities, obligations, claims, actions, damages, penalties, disbursements, costs, fees or expenses arise with respect to the Financing Documents, including, without limitation, those which may arise from or relate to (a) any depository account and/or any and all agreements executed in connection with the foregoing; (b) the issuance of any Letters of Credit or any indemnities issued by Bank in connection therewith; (c) any and all claims or expenses asserted against Bank as a result of any Debtor's or any Guarantor's failure to comply with any authorization or any environmental pollution, hazardous material or environmental clean-up relating to the owned real properties; and (d) any claim or expense which results from any Debtor's or any Guarantor's operations and use of real property, which Bank may sustain or incur (other than solely as a result of the willful misconduct of the Indemnified Parties as finally determined by a court of competent jurisdiction), all whether through the alleged or actual negligence of such Person or otherwise, except and to the extent that the same results |

15

| | |
|---|---|
| | from the willful misconduct of such Indemnified Party as finally determined by a court of competent jurisdiction. Borrower hereby agrees that this indemnity shall be severable from and shall survive any termination of this Addendum, as well as the payment in full of the Obligations which may be due hereunder. |
| **Release, Waiver or Limitation of Any Right Under § 506**: | |
| Exhibit 1, p. 21, § 4.31. Final Order, p. 18, § 5.5. | In accordance with and to the extent permitted by the Financing Orders, each Debtor hereby waives any claims to surcharge the Collateral under Section 506(c) of the Bankruptcy Code. |
| Exhibit 1, pp. 21-22, § 4.33(e) | Until such time as all Postpetition Obligations have been paid in full, except as otherwise expressly provided by the Financing Orders, Debtors shall not seek or support any approval of the granting of any priority for any administrative expense, secured claim or unsecured claim (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative priority expenses of the kind specified in sections . . . 506(c) . . . which is equal or superior to the priority in respect of the Postpetition Obligations unless otherwise expressly consented to by Bank in writing. |

**The DIP Financing Agreement Should be Approved**

10. The Debtors have been unable to obtain other credit under Bankruptcy Code § 364(a) or (b). As a result, any postpetition financing needs to provide a lender with liens and superpriority claims pursuant to Bankruptcy Code §§ 364(c)(1) and (2). Under the circumstances, the Final Facility satisfies applicable law and the Final Order should be approved.

11. In making the decision to enter into the DIP Loan, the Debtors' business judgment is entitled to deference. A debtor's authority to operate its business

> necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters. . . . The discretion to act with regard to planning business activities is at the heart of the debtor's power. . . . Business judgments should be left to the board room and not to this Court.

*In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985). Pursuant to *Simasko* and similar precedent, the Debtors may exercise reasonable business judgment in negotiating the terms of loans such as the DIP Loan, and to make the trade-offs necessary to complete a deal.

12. The Debtors' decision to obtain the postpetition financing represents an exercise of their sound business judgment in the continued operation of their businesses and the beginning of the process to consummate a reorganization plan. The proposed loan is the mechanism that is

most likely to allow the Debtors to operate efficiently in bankruptcy, increase the value of their assets, and reorganize.

13. The deference normally afforded a debtor's business judgment is appropriately heightened at the commencement of a case like this. Reorganization "is the ultimate goal of Chapter 11." *MBank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987). The Debtors' efforts "are not only to be encouraged, but also their efforts during the administration of the proceeding or measured in light of that [goal]." *Id*. Because the proposed postpetition financing preserves values and furthers a reorganization, the Debtors' decision to proceed with financing should be approved.

### Certain Specific Loan Provisions Are Appropriate in These Cases

14. As indicated above, the proposed financing includes terms that included in the Local Rule 4001-3APP. The Debtors assert that all of said provisions (all included in the chart above) are (a) reasonable, (b) provisions required by Wells Fargo as a condition of providing the necessary funding, and (c) do not adversely affect the estate or creditors.

### Conclusion

15. For the foregoing reasons, the Debtors submit that the proposed lending described herein in the best interest of the estates, complies with § 364 of the Bankruptcy Code, and should be approved.

Dated this 10th day of February, 2010.

        SENDER & WASSERMAN, P.C.

        */s/ David V. Wadsworth*
        _____
        Harvey Sender, #7546
        John B. Wasserman, #10011
        David V. Wadsworth, #32066
        Matthew T. Faga, #41132
        1660 Lincoln Street, Suite 2200
        Denver, Colorado 80264
        (303) 296-1999; (303) 296-7600 (fax)
        dvw@sendwass.com
        Attorneys for the Debtors in Possession