# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| BRUNDAGE-BONE CONCRETE ) | Case No. 10-10758 ABC |
| PUMPING, INC., ) | Chapter 11 |
| EIN: 84-0972141 ) | |
| ) | |
| Debtor. ) | |
| ) | |
| In re: ) | |
| ) | Case No. 10-10760 EEB |
| JLS CONCRETE PUMPING, INC. ) | Chapter 11 |
| EIN: 84-0972141 ) | |
| ) | Jointly Administered Under |
| Debtor. ) | Case No. 10-10758 ABC |
| ) | |

## LIMITED OBJECTION OF THE
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' AMENDED MOTION FOR FINAL ORDER APPROVING DEBTOR-IN-POSSESSION FINANCING, USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

The Official Unsecured Creditors' Committee (the "Committee") in the above-captioned jointly administered cases, through their undersigned counsel, for its Limited Objection to Debtors' Amended Motion for Final Order Approving Debtor-In-Possession Financing, Use of Cash Collateral and Adequate Protection (this "Objection"), states:

### INTRODUCTION

1. The Committee does not doubt the need for debtor-in-possession financing to continue the debtors' concrete pumping operations toward a plan of reorganization, but the business justification for some of the pertinent terms of the facility appears questionable. Barring some change in those terms, and as explained further herein, the Committee objects.

## BACKGROUND

2. On January 18, 2010 (the "Petition Date"), Brundage-Bone Concrete Pumping, Inc. and JLS Concrete Pumping, Inc. (together, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of title 11, U.S.C. (the "Bankruptcy Code").

3. On February 4, 2010, the United States Trustee appointed the Committee, consisting of the following members: (a) AIG Commercial Equipment Finance, Inc.; (b) Putzmeister America, Inc.; (c) Construction Forms, Inc.; (d) Rod Pugliese; and (e) David Tinkle.

4. On February 10, 2010, the Debtors filed their Amended Motion for Final Order Approving Debtor-in-Possession Financing, Use of Cash Collateral and Adequate Protection (the "DIP Financing Motion"), seeking final approval of a credit facility with Wells Fargo Bank, National Association ("Wells Fargo"). The proposed post-petition funding agreement (the "DIP Loan Agreement") with Wells Fargo for up to $15,000,000 is a marked change from the Debtors' initial funding request filed on the Petition Date, and perhaps injects some uncertainty in the Debtors' ultimate ability to reorganize given the choice to change horses mid-stream.

5. The Committee does not object to the funding itself, or to the proposed loan fees and pricing, which seem reasonable. The proposed carve out for professional fees, insofar as it eliminates the disparate treatment evident in the Debtors' prior proposed financing, is less than adequate, however, given the current burn rate for professionals in these cases. Debtors' counsel has a first interim fee application on file for first two-weeks of the case for $49,384.50 in fees; special counsel to the Debtors seek an additional $97,167.50 in fees for the same period. Professional fees accruing at a $290,000 monthly clip on the Debtors' side alone will erode the $1,000,000 carve out scarcely halfway through the proposed post-petition funding term. A carve out of $1,500,000 may be appropriate, particularly since the Debtors' budget, *see* docket entry

number 97, includes $500,000 for professional fees through thirteen weeks, and the carve out is to be reduced by all unpaid fees as of an event of default, even if those fees were allowed prior to such a default. *See* DIP Loan Agreement, p. 8, § 1.8(c)

6. Aside from otherwise technical issues that may be clarified as noted below, the Committee's concerns relate to Wells Fargo's effort to limit the Debtors' options in reorganizing their affairs for the benefit of all creditors. The Committee believes that the terms of the DIP Loan Agreement reflect an impermissible attempt to dictate the ultimate outcome of the Debtors' cases.

## ARGUMENT AND AUTHORITY

7. Debtor-in-possession financing agreements, like agreements providing for adequate protection for the use of cash collateral, should not be used as "vehicles . . . to control a debtor in the course of its reorganization." *See In re Gallegos Research Group Corp.*, 193 B.R. 577, 586 (Bankr. D. Colo. 1995). The Court instead "must preserve the purpose and process of reorganization and protect creditors for a reasonable time during which the debtor restructures its debts." *Id.* Here, the DIP Loan Agreement reflects an effort by Wells Fargo to exert too much control at this stage in the Debtors' cases and hamstrings the Debtors' ability to plan their business through the reorganization process. *See In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) (recognizing that business planning "is at the heart of the debtor's power"). And many of the provisions are, as recognized by the Debtors in the DIP Financing Motion, expressly contrary to L.B.R. 4001-3APP. Other than acceding to Wells Fargo's demands, the Debtors' DIP Financing Motion does not "demnstrat[e] need or cause" for these provisions.

8. Substantively, the Committee objects to use of funds advanced under the DIP Loan Agreement to pay off the prepetition "Line of Credit Obligations," which as of the Petition

3

Doc# 3174177\1

Date, totaled some $3.5 million, not including a potential $7.45 million more that might arise under separate letters of credit. *See* DIP Loan Agreement, p. 1, Recital B(i), p. 6, § 1.5(ii), and p. 35. The Debtors' budget, attached to the interim financing order, docket entry number 97, does not appear to provide for repayment of Wells Fargo's prepetition Line of Credit Obligations. Use of post-petition financing to pay off prepetition debt will reduce the overall funding available for the Debtors' operations.

9. The Committee also objects to Wells Fargo's first priority, post-petition lien against all unencumbered assets to the extent that those unencumbered assets include "assets encumbered by avoidable liens." *See* DIP Loan Agreement, pp. 7-8, § 1.8(b); proposed final order, at pp. 9-11. Any liens subject to avoidance should be preserved for the benefit of the estate under § 551 of the Bankruptcy Code, and not preserved exclusively for Wells Fargo. *See* L.B.R. 4001-3APP (a)(10).

10. Upon payment of the "Borrowing Base Obligations," Wells Fargo should release its pre- and post-petition liens on the "Borrowing Base Collateral," and its post-petition liens all other collateral. DIP Loan Agreement, p. 26, § 6.8. Payment of post-petition obligations, which are part of the Borrowing Base Obligations, should free-up all collateral pledged to secure the post-petition financing. In this connection, while § 4.5 of the proposed final order provides that Wells Fargo shall have no duty to marshall assets, § 1.8(a) of the DIP Loan Agreement suggests an order of collateralization (and perhaps repayment) whereby Wells Fargo should first seek repayment of the outstanding obligations under the DIP Loan Agreement from collateral other than the unencumbered assets as of the Petition Date. Otherwise, with payment of Wells Fargo's pre-petition Line of Credit Obligations from post-petition financing, unencumbered assets ostensibly available for general unsecured creditors as of the Petition Date could be used first to pay off the bank, with all of the bank's junior, self-priming, and "same rank" liens reserved in its

4

discretion for repayment elsewhere – in essence cross-collateralizing the bank's pre-petition Line of Credit Obligations with post-petition, unencumbered assets.

11. The Committee objects, more fundamentally, to Wells Fargo's reservation of what amounts to veto powers over the Debtors and their anticipated Chapter 11 plans. *See id.* at (a)(5). Under the DIP Loan Agreement, the Debtors may not seek an extension of the exclusivity period without Wells Fargo's written consent. *See* DIP Loan Agreement, at p. 23, § 5.1(j). And the Debtors may not even file a plan of reorganization unless the plan meets with Wells Fargo's pre-approval. *See id.* at p. 22, § 4.33(j). Perhaps more critically, the post-petition facility will be in default if the Debtors even negotiate with any third-party for additional or replacement financing – as so-called "Adverse Action" – without Wells Fargo's consent. *See id.* at p. 21, § 4.32. Precluding the Debtors from seeking Court authority to use cash collateral until the "Borrowing Base Obligations" are paid to Wells Fargo likewise is unwarranted. *See id.* at p. 22, § 4.33(i) L.B.R. 4001-3APP(a)(11).

12. With respect to timing, the Committee objects to the "drop dead date" of 90 days from any final order for the commencement of any "Adverse Action" against Wells Fargo. See DIP Loan Agreement, p. 9, § 2.7. Given the vast amount of information that the Committee needs to digest with respect to the Debtors' operations and prospects for reorganization, that deadline is simply unworkable for any meaningful investigation of the prepetition loans. The Committee also does not believe that a deadline of May 29, 2010 – scarcely four months from the Petition Date – for any claims objections (so-called "Prepetition Claim Objections") challenging Wells Fargo's prepetition claims is appropriate. *See* proposed final order, p. 16, § 5.1. Similarly, the broad releases and indemnity from the Debtors should not occur at this time. *See* DIP Loan Agreement, at pp. 19-20 and 28, §§ 4.30 and 6.15; L.B.R. 4001-3APP(a)(6).

13.    Other technical objections, or at least points for which the Committee seeks some clarification, include: (a) any fees and costs payable to Wells Fargo should be subject to Committee review for reasonableness, with an opportunity to object (DIP Loan Agreement, pp. 16-17, § 4.16); (b) any defaults for the failure to comply with negative covenants should be subject to a 10 calendar day cure period (DIP Loan Agreement, p. 23, § 5.1(e)); (c) the "Borrowing Base" calculations may require some clarification insofar as subsection 1.2(c) could conceivably result in a negative number to offset subsections 1.2(a) and (b), and thus, substantially reduce the funding available to the Debtors; (d) any conclusions as to Wells Fargo's right to credit bid under § 363(k) should be reserved for determination at a sale hearing or in accordance with bidding and auction procedures and should not be part of the final financing order (see proposed final order, § 4.4); and (e) the Debtors should provide the Committee with all financial information provided to Wells Fargo (DIP Loan Agreement, p. 13, § 4.2).

WHEREFORE, the Committee respectfully requests that the Court sustain this Objection and for other relief as deemed appropriate.

Dated this 25th day of February, 2010.

LINDQUIST & VENNUM P.L.L.P.

By: /s/Theodore J. Hartl
John C. Smiley, #16210
Harold G. Morris, Jr., #8409
Theodore J. Hartl, #32409
600 17th Street, Suite 1800 South
Denver, CO, 80202-5441
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
E-mail: jsmiley@lindquist.com
E-mail: hmorris@lindquist.com
E-mail: thartl@lindquist.com

Counsel for the Unsecured Creditors' Committee

Doc# 3174177\1

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of February, 2010, a true and correct copy of the foregoing **LIMITED OBJECTION TO DEBTORS' AMENDED MOTION FOR FINAL ORDER APPROVING DEBTOR-IN-POSSESSION FINANCING, USE OF CASH COLLATERAL AND ADEQUATE PROTECTION** was deposited in the U.S. Mail, first class postage prepaid, to the addresses listed on the attached.

/s/ Laura Lee Rippe
Laura Lee Rippe

Label Matrix for local noticing
1082-1
Case 10-10758-ABC
District of Colorado
Denver
Thu Feb 25 14:53:32 MST 2010

Lawrence Bass
3200 Wells Fargo Center
1700 Lincoln St.
Denver, CO 80203-4500

John H Bernstein
1801 California St.
Ste. 3100
Denver, CO 80202-2626

Charles A. Bewley
370 17th St.
Ste. 4800
Denver, CO 80202-5698

James P. Bickford
1225 17th St., Ste. 2300
Denver, CO 80202-5535

Jonathan A. Braun
2060 Broadway
Ste. 280
Boulder, CO 80302-5241

Brundage-Bone Concrete Pumping, Inc.
6461 Downing St
Denver, CO 80229-7225

(c)JAMES T. BURGHARDT
16 MARKET SQUARE
1400 16TH ST STE 600
DENVER CO  80202-1486

Marc Carmel
300 N. LaSalle
Chicago, IL 60654

M. Frances Cetrulo
370 17th St.
Ste. 4800
Denver, CO 80202-5698

Richard T. Chapman
1 O'Connor Plaza
7th Fl.
PO Box 1969
Vitoria, TX 77902-1969

Brent R. Cohen
1200 17th St.
Ste. 3000
Denver, CO 80202-5855

Deborah A. Crabbe
1111 Third Ave., Ste. 3400
Seattle, WA 98101-3264

Matthew T. Faga
1660 Lincoln St.
Ste. 2200
Denver, CO 80264-2202

Mary Jo Heston
1420 5th Ave.
Ste. 4100
Seattle, WA 98101-2375

JLS Concrete Pumping, Inc.
6461 Downing St
Denver, CO 80229-7225

Bruce W. Leaverton
1420 Fifth Ave, Ste. 4100
Seattle, WA 98101-2375

James M. Liston
155 Federal St.
9th Fl.
Boston, MA 02110-1727

James T. Markus
1700 Lincoln St.
Ste. 4000
Denver, CO 80203-4540

Richard M. Maseles
301 W. High St.
Rm. 670
PO Box 475
Jefferson City, MO 65105-0475

Kevin S. Neiman
1660 Lincoln St.
Ste. 1900
Denver, CO 80264-1901

(c)MATTHEW J. OCHS
1600 MARKET ST.
1400 16TH ST STE 600
DENVER CO  80202-1486

Jay H. Ong
One American Center
600 Congress Ave.
Ste. 2900
Austin, TX 78701-3057

Michael J. Pankow
410 17th St.
22nd Fl.
Denver, CO 80202-4437

Jeremy Peck
1801 California St.
Ste. 3100
Denver, CO 80202-2626

Christopher L. Richardson
1550 17th St.
Ste. 500
Denver, CO 80202-1500

John L. Ruppert
1225 17th St.
Ste. 2300
Denver, CO 80202-5535

Ray C. Schrock
300 N. LaSalle
Chicago, IL 60654

Harvey Sender
1660 Lincoln St.
Ste. 2200
Denver, CO 80264-2202

Milnor H. Senior III
1700 Lincoln St.
Ste. 4100
Denver, CO 80203-4541

| | | |
|---|---|---|
| John C. Smiley<br>600 17th St.<br>Ste. 1800-S<br>Denver, CO 80202-5441 | Jack L. Smith<br>Holland&Hart<br>PO Box 8749<br>Denver, CO 80201-8749 | US Trustee<br>999 18th St.<br>Ste. 1551<br>Denver, CO 80202-2415 |
| David Wadsworth<br>1660 Lincoln St.<br>Ste. 2200<br>Denver, CO 80264-2202 | John B. Wasserman<br>1660 Lincoln St.<br>Ste. 2200<br>Denver, CO 80264-2202 | Leo M. Weiss<br>999 18th St.<br>Ste. 1551<br>Denver, CO 80202-2415 |
| Thomas J. Wolf<br>1600 Broadway<br>Ste. 1480<br>Denver, CO 80202-4902 | Risa Lynn Wolf-Smith<br>555 17th St.<br>Ste. 3200<br>Denver, CO 80202-3921 | John F. Young<br>1700 Lincoln St.<br>Ste. 4000<br>Denver, CO 80203-4540 |

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

| | | |
|---|---|---|
| James T. Burghardt<br>16 Market Square<br>1400 16th St<br>6th Floor<br>Denver, CO 80202 | Matthew J. Ochs<br>1600 Market St.<br>1400 16th St., 6th Fl.<br>Denver, CO 80202 | End of Label Matrix<br>Mailable recipients   38<br>Bypassed recipients   0<br>Total                 38 |