# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUNDAGE-BONE CONCRETE PUMPING, INC., | ) ) | Case No. 010-10758 ABC |
| EIN:  84-0972141 | ) ) | Chapter 11 |
| Debtor. | ) ) ) | |
| In re: | ) ) | |
| JLS CONCRETE PUMPING, INC. | ) ) | Case No. 010-10760 EEB |
| EIN:  84-0972141 | ) ) | Chapter 11 |
| Debtor. | ) ) | |

**SUPPLEMENTAL BRIEF RE: APPOINTMENT OF AN EXAMINER PURSUANT TO 11 U.S.C. § 1104 (C)(2) AND §1106(B) SOLELY TO INVESTIGATE AND REPORT ON MATTERS SET FORTH IN  §1106(A)(3)&(4)**

1.     On January 20, 2010, Wells Fargo Bank, N.A., Wells Fargo Equipment Finance, Inc., and Wachovia Financial Services, Inc. a/k/a First Union Commercial Corporation (collectively, "Wells Fargo") filed the Emergency Motion for the Appointment of an Examiner with Expanded Powers Pursuant to 11 U.S.C. §1104(c) (1) & (2) and §1106(b) and Memorandum in Support Thereof (Docket No. 35) (the "Examiner Motion"). The Examiner Motion was joined by KeyBank, NA and Key Equipment Finance, Inc (collectively "KeyBank") and Sun Trust Equipment Finance & Leasing Corp ("Sun Trust") (Docket Nos. 73 & 181 respectively), (collectively Wells Fargo, KeyBank and Sun Trust will be referred to as "the Movants").

2.     The Movants collectively hold in excess of 78% of the Debtors' total secured and unsecured debts and as set forth in the Debtors' schedules. <u>See</u> Exhibits 2 & 3.[1]

---

[1] Under the Debtors' numbers as set forth in Schedules D & F,  the undersecured claims of the Debtors' thirteen secured lenders/lessors listed represent approximately 79.5% of the scheduled total unsecured debt. The unsecured portion of the Debtors' secured debts is understated in the Debtors' schedules, and the deficiency claims of the Debtors' thirteen lenders likely represents over 95% of the total unsecured claims in this case.

3. This Court has scheduled a status conference on the Examiner Motion for March 1, 2010. As set forth in the Certificate for Contested Matter filed pursuant to L.B.R 9013-1(c)(2) (the "Examiner Certificate"), Movants are seeking the immediate appointment of an Examiner with the basic examiner investigative and reporting powers (the "Limited Power Examiner") under 11 U.S.C. §1106(a)(3) & (4) based on the record before the Court and without the need for an evidentiary hearing . See Exhibit 1: Amended Proposed Order for Appointment of Examiner (the "Amended Examiner Order") (redlined to the originally proposed order filed with the Examiner Motion). See also Examiner Certificate, Paragraph 7. This relief represents a scaling back of the relief originally requested in the Examiner Motion in that the Movants are not currently seeking any expanded powers for the appointed examiner. See Exhibit 1, Amended Examiner Order.

4. The Movants request for appointment of a Limited Power Examiner without the need for an evidentiary hearing is based on the Debtors' filed schedules which set forth amounts of undisputed, liquidated, non-contingent unsecured debts in excess of the $5 million required for the mandatory appointment of an examiner pursuant to 11 U.S.C. §1104(c)(2). Specifically, Schedule D lists the undisputed, liquidated and non-contingent unsecured portion of the secured creditors' debts in the amount of $14,884,997.91[2], and Schedule F includes an additional trade debt in the amount of $3,816,511. See Exhibit 2: Schedule D and Exhibit 3, Summary of Schedules.

5. Fed. Bankr. R. Pro. 3003(b)(1) ("Bankruptcy Rule 3003(b)(1) provides in relevant part as follows:

(b) **Schedule of liabilities and list of equity security holders.**

**(1) Schedule of liabilities.**

The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.

6. Section 1104(c)(2) of Title 11 provides in relevant part that:

"the court *shall* order the appointment of an examiner . . . if . . . the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

---

[2] This unsecured amount is likely significantly understated. For the Debtor to suggest otherwise and attempt to amend the schedules to reflect an unsecured portion of the Movants and other secured lenders' debts that is less than the $5 million threshold of 11 U.S.C. §1104(c)(2) would constitute bad faith. The Debtors' own appraisals show that the unsecured portion of the Movants far exceeds the $5 million amount.

11 U.S.C. § 1104(c)(2) (emphasis added).

7. Thus, based on the evidence before this Court and as admitted by the Debtors in their schedules, it is clear that the $5 million threshold debt limits set forth in 11 U.S.C. §1104(c)(2) have been met.

8. Collier on Bankruptcy ¶ provides that:

> "Section 1104(c)(2) does not leave any room for the court to exercise discretion about whether an examiner should be appointed, as long as the $5,000,000 threshold is met and a motion for appointment of an examiner is made by a party in interest."

7 Collier on Bankruptcy ¶ 1104.03[2][b] (15th Ed.). The legislative history of Section 1104(c)(2) also supports the mandatory nature of the appointment once the $5 million debt limit is met. Id. See also, In re Revco D.S., Inc., 898 F.2d 498 (6th Cir. 1990). In re Vision Dev. Group of Broward County, LLC, 2008 WL 2676827, at 3;(Bankr. S.D. Fla. June 30, 2008) (holding that appointment of an examiner was mandatory where mezzanine lenders had claims of over $5 million); In re Loral Space & Comm., Ltd., No. 04 Civ. 8645RPP, 2004 WL 2979785, at 5 (S.D.N.Y. Dec. 23, 2004) (holding section 1104(c)(2) mandates the appointment of an examiner where the debt threshold is met); In re Big Rivers Elec. Corp., 213 B.R. 962, 965-66 (Bankr. W.D. Ky. 1997) (holding that appointment of an examiner was mandatory because debt met $5 million threshold). The few cases that have denied the appointment of an examiner where the threshold amount of debt has been met are factually distinguishable from the facts of this case and generally have involved cases where there was significant delay in seeking the appointment of the examiner, where a moving party's motion sought a tactical advantage in pending litigation, or where the examiner's investigation would duplicate the investigative efforts of others. See e.g., In re Calpine Corp., Case No. 05-60200 at 73 (Bankr. S.D.N.Y. Oct. 24, 2007) (denying the requesting party's motion for appointment of an examiner because the "ill-timed motion smacks ... of litigation leverage ...); In re Shelter Resources Corp., 35 B.R. 304, 305 (Bankr. N.D. Ohio 1983) (denying appointment based on duplication of efforts).

9. Sections 1106(b) and 1106(a)(3) & (4) of Title 11 provide guidance as to the scope of the duties of a Limited Power Examiner. Specifically, Sections 1106(a)(3) & (4) provide that an examiner shall perform the following duties of a trustee:

> (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (4) as soon as practicable - (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and (B) transmit a copy or a summary of any such statement to any creditors' committee or

3

equity security holders' committee, to any indenture trustee, and to such other entity as the court designates

11 U.S. C. §1106(a)(3)&(4).

10. As set forth in the Amended Order, which is a significantly scaled back version of the originally filed proposed order, the Limited Power Examiner shall be asked to quickly investigate over a 45 day period the facts related to the following areas:

a) investigate (1) the allegations concerning the acts and mismanagement of the Debtor's officers, directors and managers as set forth in the motion for the appointment of a trustee; (2) whether the Debtor's management is acting in the best interests of creditors; and (3) whether the Debtor's management is able to act in the best of interest of creditors because of the alleged conflicting interest of Messrs. Brundage and Bone, and make recommendations to the Court concerning the advisability of the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a) or a chief restructuring officer;

b) investigate the Debtors' formulation of a proposed plan including their support for the Aurora Resurgence Management Partners LLC and CFS Services 110 LLC sponsored plan (the "Aurora Plan") and whether such actions are in the best interests of creditors and to make recommendations regarding the advisability of the termination of the Debtors' exclusivity periods under 11 U.S.C. § 1121 to permit the filing of a plan supported by the Movants and the Debtors' other lenders as an alternative to the Aurora Plan;

c) investigate and report to the Court concerning the Debtors' failure to timely address the return of equipment to equipment lessors and lenders, the resulting accumulation of administrative expenses and the proposals for adequate protection.

11. Wells Fargo and the other Movants have lost confidence in the Debtors. If the Debtors continue to pursue the Aurora based plan as it appears they intend to do, Wells Fargo (and likely the other secured creditors including the other Movants) will vigorously oppose the plan resulting in the expenditure of significant administrative expenses through a costly confirmation fight with the majority of the Debtors' creditors. Wells Fargo along with the other lenders, who hold virtually all of the secured and unsecured debt, are working on finalizing their lender plan. The appointment of a Limited Power Examiner to investigate these matters will avoid many of these costs and provide valuable guidance to the Court and the parties in interest as to the appropriate course of action on the pending motions as well as on the lenders' plan which will be finalized shortly.

12. The Debtors' initial DIP Financing Motion with Aurora which tied the Debtors' business future (and that of the creditors) to a plan with Aurora that had not been filed and the Debtors' signing of a commitment letter with Aurora which purported to bind the Debtor to pay Aurora's significant professional fees and costs and to grant a security interest to Aurora to secure the same within three days prior to the bankruptcy

4

shows a lack of transparency in the Debtors dealings with its creditors and has caused the Movants to lose confidence in the Debtors' and their management.  <u>See</u> Exhibit 4: Aurora Commitment Letter.[3]  In addition to the mandatory requirement that the Court appoint an examiner based on unsecured debt vastly in excess of $5 million, this lack of transparency further justifies the appointment of the Limited Power Examiner as set forth in the Amended Order as reflected in the existing record before this Court.

13. Movants accordingly request that the Court enter the Amended Order appointing a Limited Power Examiner without further hearing.

DATED at Denver, Colorado, this 25th day of February, 2010.

Respectfully submitted,

*/s/ Risa Lynn Wolf-Smith*
Risa Lynn Wolf-Smith, #15835
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone:  303-295-8011
Facsimile:  303-295-8261
E-mail:  rwolf@hollandhart.com
and
LANE POWELL PC
Bruce W. Leaverton, WSBA #15329
Mary Jo Heston, WSBA #11065
Appearing pro hac vice
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
Email: Leavertonb@lanepowell.com
Hestonm@lanepowell.com
**ATTORNEYS FOR WELLS FARGO BANK, NATIONAL ASSOCIATION, WELLS FARGO EQUIPMENT FINANCE, INC. WACHOVIA FINANCIAL SERVICES, INC., A/K/A/ FIRST UNION COMMERCIAL CORPORATION**

---

[3] Aurora has relied on this Commitment Letter to respond to KeyBank's Motion re: Aurora's Lack of Standing.

5

## CERTIFICATE OF SERVICE

      I certify that on February 25, 2010, I served a copy of the foregoing document to the following by

☐    U.S. Mail, postage prepaid
☐    Hand Delivery
☐    Fax
☒    Electronic Service by LexisNexis File & Serve

Harvey Sender
David V. Wadsworth
John B. Wasserman
Sender & Wasserman, P.C.
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
*Brundage-Bone Concrete Pumping, Inc.*

Michael J. Pankow
Steven E. Abelman
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202-4432
*Aurora Resurgence Management Partners LLC and Commercial Finance Services 110 LLC*

Leo M. Weiss
Office of the United States Trustee
999 18th Street, Suite 1551
Denver, Colorado 80202-2415

John F. Young
Markus Williams Young
   & Zimmermann, LLC
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
*People's Capital and Leasing Corp.*

John H. Bernstein
Kutak Rock LLP
1801 California Street, Suite 3100
Denver, CO 80202
*General Electric Capital Corporation*

James P. Bickford
Ballard Spahr Andrews & Ingersoll LLP
1225 17th Street, Suite 2300
Denver, CO 80202
*Brundage-Bone Concrete Pumping, Inc.*

Jonathan A. Braun
O'Brien Waring & Zender PC
2060 Broadway, Suite 280
Boulder, CO 80302
*Key Bank*

James T. Burghardt
Moye White
16 Market Square
1400 16th Street, 6th Floor
Denver, CO 80202
*AIG Commercial Equipment Finance, Inc.*

M. Frances Cetrulo
Berenbaum Weinshienk PC
370 17th Street, Suite 4800
Denver, CO 80202
*PNC Equipment Finance LLC*

Richard T. Chapman
1 O'Connor Plaza, 7th Floor
Vitoria, TX 77902
*Lone Star Bank, S.S.B.*

| | |
|---|---|
| Brent R. Cohen<br>Rothgerber Johnson & Lyons LLP<br>1200 17th Street, Suite 3000<br>Denver, CO  80202<br>*Banc of America Leasing* | Deborah A. Crabbe<br>1111 Third Ave., Suite 3400<br>Seattle, WA  98101-3299<br>*Key Bank* |
| Matthew T. Faga<br>Sender & Wasserman<br>1660 Lincoln Street<br>Suite 2200<br>Denver, CO  80264<br>*Brundage-Bone Concrete Pumping, Inc.* | James T. Markus<br>1700 Lincoln Street, Suite 4000<br>Denver, CO  80203<br>*Key Equipment Finance, Inc.* |
| Richard M. Maseles<br>301 W. High Street, Room 670<br>Jefferson City, MO  65105-0475<br>*Missouri Department of Revenue* | Kevin S. Neiman<br>Pearson Horowitz & Burnett PC<br>1660 Lincoln Street, Suite 1900<br>Denver, CO  80264<br>*RBS Asset Finance, Inc.* |
| Matthew J. Ochs<br>Moye White<br>16 Market Square<br>1400 16th Street, 6th Floor<br>Denver, CO  80202<br>*AIG Commercial Equipment Finance, Inc.* | Milnor H. Senior, III<br>1700 Lincoln Street, Suite 4100<br>Denver, CO  90203-4541<br>*Sun Trust Financial & Equipment Leasing, Inc.* |
| Jeremy Peck<br>1801 California Street<br>Kutak Rock<br>Suite 3100<br>Denver, CO  80202<br>*General Electric Capital Corporation* | Christopher L. Richardson<br>Davis Graham & Stubbs LLP<br>1550 17th Street, Suite 500<br>Denver, CO  80202<br>*Green Manning Bunch* |
| Thomas J. Wolf<br>Ireland Stapleton Pryor & Pascoe, P.C.<br>1675 Broadway, Suite 2600<br>Denver, CO  80202<br>*Enterprise Leasing Company of Denver, Inc.* | John C. Smiley<br>Harold G. Morris, Jr.<br>Theodore J. Hartl<br>Lindquist & Vennum P.L.L.P.<br>600 17th Street, Suite 1800-South<br>Denver, CO  80202 |
| Marc J. Carmel<br>Ray C. Schrock<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL  60654 | Charles A. Bewley<br>Berenbaum Weinshienk PC<br>370 17th Street, Suite 4800<br>Denver, CO  80202 |

                                                                               *s/ Debbie Cochran*