## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUNDAGE-BONE | ) | Case No. 10-10758 ABC |
| CONCRETE PUMPING, INC. | ) | Chapter 11 |
| EIN: 84-0972141 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| JLS CONCRETE PUMPING, INC. | ) | Case No. 10-10760 EEB |
| EIN: 84-0972141 | ) | Chapter 11 |
| | ) | **JOINTLY ADMINISTERED** |
| Debtor. | ) | |

**[PROPOSED] FINAL FINANCING ORDER (A) AUTHORIZING DEBTOR TO INCUR POST-PETITION INDEBTEDNESS; (B) GRANTING POST PETITION LIENS AND SUPERPRIORITY CLAIMS, (C) AUTHORIZING USE OF CASH COLLATERAL; AND (D) GRANTING OTHER RELIEF**

This matter comes before the Court on the Debtors' Motion for Entry of the Final Financing Order[1] (the "DIP Financing Motion") pursuant to sections 105, 361, 362, 364(c)(l), 364(c)(2), and 364(c)(3) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c), 4001-2 and 9014: 1) authorizing the Debtors to incur the Obligations under the terms of the Addendum, the Final Financing Order and the DIP Loan Documents; 2) authorizing the Postpetition Liens and Superpriority Claim; 3) authorizing the use of Cash Collateral; 4) authorizing Adequate Protection; and 5) granting the other relief in favor of the Bank. Unless otherwise indicated, all capitalized terms herein have the meanings as set forth in Exhibit A attached hereto, which by this reference is made a part hereof.

---

[1] The terms capitalized in this Final Financing Order shall have the meanings set forth on Exhibit A hereto, unless otherwise defined herein.

1

The Debtors served notice of the Final Hearing on the DIP Financing Motion and of the relief requested therein by U.S. mail, or such other means as indicated in the filed certificates of notice on the Noticed Parties on February 10, 2010.  On January 21, 2010, the Bankruptcy Court entered the Cash Collateral Order, which order was continued through January 26, 2010. On January 26, 2010 the Bankruptcy Court entered the Interim Financing Order under 11 U.S.C. §§ 361, 362, 363 and 364 and Bankruptcy Rule 4001 approving the terms of the Term Sheet, continuing the terms and conditions of the Cash Collateral Order through the Final Hearing, granting the Bank certain liens and other forms of Adequate Protection on an interim basis including, but not limited to, Post Petition Liens and a Super-Priority Claim and setting the Final Hearing date for March 1, 2010.  Upon the record made by Debtors before and at the Final Hearing, including the DIP Financing Motion and the pleadings and papers filed with the Court relating to the Bankruptcy Cases, and after due consideration and good and sufficient cause appearing therefore,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.      Petition.  On the Petition Date, Debtors filed the Petitions and commenced the Bankruptcy Cases.  Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108.  Pursuant to order of the Bankruptcy Court, the Debtors' cases are being jointly administered under Case No. 10-10758.

B.      Jurisdiction.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), and (M).  Venue of the Bankruptcy Cases and the DIP Financing Motion in this Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice.  Under the circumstances, the Notice of the Final Hearing on the DIP Financing Motion constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 400 l(c) and the Bankruptcy Court's applicable local rules.

D. <u>Debtors' Stipulations</u>.  Without prejudice to the rights of any other party (but subject to the limitations thereon in <u>Section 5.1</u> of this Final Financing Order), Debtors admit, stipulate and agree that:

(1) *Prepetition Financing Agreements*.  Prior to the Petition Date, Borrower was a party to the Prepetition Financing Agreements, including, but not limited to the Prepetition Credit Agreement, pursuant to which Bank made and Borrower received loans, advances, and other credit accommodations, and Borrower and JLS and the Guarantors were obligated to the Bank for the Prepetition Obligations as follows:

(2) *Line of Credit Obligations Amount*.  As of the Petition Date the Debtors' Pre-Petition Obligations to the Bank include: (i) Line of Credit Obligations in the amount of $3,516,930.43 (exclusive of the Letter of Credit Subfeature), plus all Allowable 506(b) Amounts; (ii) .Letter of Credit Subfeature Obligations in the amount of $7,450,000.00, plus all Allowable 506(b) Amounts. The Line of Credit Obligations constitute legal, valid and binding obligations of the Debtors and are not subject to any offset, defense, counterclaim, avoidance, or subordination pursuant to the Bankruptcy Code or any other applicable law.

(3) *Other Bank Obligations*.  As of the Petition Date the Debtors Prepetition Obligations include: (i) Equipment Line of Credit Obligations in the amount of $23,663,500.00 plus all Allowable 506(b) Amounts (ii);Term Loan A Obligations in the amount of $4,006,076.00 plus all Allowable 506(b) Amounts; (iii) Term Loan B Obligations in the amount of $7,858,072.00 plus all Allowable 506(b) Amounts; (iv) Term Loan C Obligations in the amount of $1,962.600.00 plus all Allowable 506(b) Amounts; (v) Term Loan D Obligations in the amount of $1,177,500.00 plus all Allowable 506(b) Amounts; (vi) Term Loan E Obligations in the amount of $1,032,000.00 plus all Allowable 506(b) Amounts; (vii) Term Loan F Obligations in the amount of $696,407.62 plus all Allowable 506(b) Amounts; (viii) Term Loan

3

G Obligations; and (ix) JLS Agreement Obligations plus all Allowable 506(b) Amounts. The Other Bank Obligations constitute legal, valid and binding obligations of the Debtors and are not subject to any offset, defense, counterclaim, avoidance, or subordination pursuant to the Bankruptcy Code or any other applicable law (except as otherwise provided pursuant to valid and binding Intercreditor Agreements between the Bank and Other Secured Creditors).

(4)     *Prepetition Collateral*.  As of the Petition Date, (a) the Prepetition Obligations are secured pursuant to the terms of the Security Instruments, the terms of the Prepetition Financing Agreements and the Perfection Documents, (b) the Prepetition Liens constitute valid, perfected, enforceable, and unavoidable first and senior priority security interests and liens in and upon the Prepetition Collateral except to the extent of any valid and binding Intercreditor Agreements between the Bank and Other Secured Creditors; (c) the value of the Borrowing Base Collateral is in excess of the amount of the Borrowing Base Obligations.

E.     Post Petition Financing  Purpose and Roll Up of Interim Facility and Line of Credit Obligations: The DIP Loan will be used for (i) ongoing working capital needs of the Debtors, including but not limited to, the payment of court-approved Professional Fees and expenses, incurred during the Bankruptcy Cases, arising after the Petition Date, all in accordance with and as limited by the Budget; and (ii) payment in full of all amounts outstanding on the Interim Facility and Line of Credit Obligations.  The initial Advance under the Post Petition Financing shall be used to pay all amounts outstanding on the Interim Facility and the Line of Credit Obligations.

4

F.     Need of Post Petition Financing, Unavailability of Credit on More Favorable Terms and Good Faith of Bank.  Based on the Debtors' representations to date, the Court makes the following findings supporting the Postpetition Financing including this Order.

(1)     *Postpetition Financing*.  Debtors have requested the Postpetition Financing from Bank, and Bank is willing to provide the Postpetition Financing upon the findings of fact and conclusions of law made herein in the Final Financing Order and upon the terms and conditions of the Addendum and the other DIP Loan Documents;

(2)     *Need for Postpetition Financing*.  Debtors do not have sufficient available sources of working capital to operate its business in the ordinary course of business without the Postpetition Financing.  Debtors' ability to maintain business relationships with its vendors, suppliers, and customers, to pay its employees, and to otherwise fund its operations, is essential to Debtors' continued viability.  The ability of Debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money is vital to the preservation and maintenance of the going concern values of Debtors and to avoid immediate and irreparable harm to Debtors' Estates.  Accordingly, Debtors have an immediate need to obtain the Postpetition Financing in order to permit, among other tasks, the orderly continuation of the operation of its businesses, to minimize the disruption of its business operations, and to manage and preserve the assets of their Estates;

(3)     *No Credit Available on Other More Favorable Terms*.  Debtors are unable to procure the same amount of financing as contemplated in the Postpetition Financing in the form of unsecured credit allowable under section 503(b)(l), as an administrative expense under section 364(a) or (b), or solely in exchange for the grant of an administrative expense priority pursuant to section 364(c)(l) without the grant of liens on its assets pursuant to section 364(c)(2).  Debtors have been unable to procure the necessary financing on a timely basis on terms more favorable than the Postpetition Financing; and

(4)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms of the Postpetition Financing (as provided in the DIP Loan Documents) are fair, just, and

5

reasonable under the circumstances, are appropriate for secured financing to a debtor in possession, reflect Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms of the Postpetition Financing have been negotiated in good faith and at arms' length by and between the parties, with all parties represented by counsel. Any credit extended under the terms of the DIP Loan Documents shall be extended in good faith by Bank as that term is used in section 364(e).

G.      <u>Adequate Protection</u>. Debtors acknowledge and admit that the Cash Collateral constitutes "cash collateral" of the Bank within the meaning of section 363(a). Pursuant to sections 361 and 363(e), Bank is entitled to adequate protection of its interest in the Prepetition Collateral in connection with Debtors' use of the Cash Collateral, the Postpetition Financing and the imposition of the automatic stay. Bank reserves all rights with respect to whether the Adequate Protection provides sufficient "adequate protection" within the meaning of section 361 of Bank's interests in the Prepetition Collateral.

H.      <u>Good Cause</u>. The Postpetition Financing and relief requested in the DIP Financing Motion are necessary, essential, and appropriate and are in the best interest of and will benefit Debtors, their creditors, and their Estates as its implementation will, among other effects, provide Debtors with the necessary liquidity (a) to minimize disruption to Debtors' businesses and on-going operations, (b) to preserve and maximize the value of the Estates for the benefit of all creditors of Debtors, and (c) to avoid immediate irreparable harm to Debtors, their creditors, their businesses, their employees, and their assets.

I.      <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Final Financing Order pursuant to Bankruptcy Rules 4001(c)(2). Objections, if any, that were made are hereby overruled.

J.      <u>Nature of Findings and Conclusions</u>. If any of the foregoing findings of fact are more properly characterized as conclusions of law, such purported findings of fact are deemed to be conclusions of law, and if any of the foregoing conclusions of law are more properly

6

characterized as findings of fact, such purported conclusions of law are deemed to be findings of fact.  Any findings of fact or conclusions of law contained in the Financing Orders are hereby incorporated herein by this reference.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.      <u>Authorization and Conditions to Postpetition Financing</u>.

1.1      <u>DIP Financing</u> <u>Motion Granted</u>.  The DIP Financing Motion is granted on a final basis pursuant to Bankruptcy Rule 4001(c)(2) as provided in this Final Financing Order.

1.2      <u>Authorization to Borrow</u>.  Debtors are hereby authorized and empowered to immediately obtain the Postpetition Financing, incur the Postpetition Obligations, and use Cash Collateral pursuant to the terms and conditions of this Final Financing Order and the DIP Loan Documents in a maximum principal amount not to exceed the Maximum Amount.

1.3      <u>DIP Loan Documents</u>.

1.3.1      <u>Authorization</u>.  Debtors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms and covenants of the Addendum and the other DIP Loan Documents,

1.3.2      <u>Approval of the DIP Loan Documents</u>.  All of the terms, conditions, and covenants contained in the DIP Loan Documents shall be sufficient and conclusive evidence of the Postpetition Financing, the Postpetition Obligations, the Postpetition Liens, the Bank Expenses, and the other rights, interests, claims, and remedies pursuant thereto, including the Releases (subject to <u>Section 5.1</u> of this Order).

1.3.3      <u>Amendment to the DIP Loan Documents</u>.  Subject to the terms and conditions of the Addendum, Bank and Debtors may amend, modify, supplement, or waive any of the DIP Loan Documents or any provision therein to the extent such amendment is a Non-Material Amendment, which shall be deemed to be approved by this Final Financing Order without further notice, review, motion, hearing, approval, or order of the Court or any party to the extent Debtors (a) provide prior written notice of the proposed amendment to (i) counsel to the Creditors' Committee, (ii) the U.S. Trustee and (iii) the remainder of the Noticed Parties,

7

(b) file a notice of the proposed amendment with the Bankruptcy Court, to which the proposed amendment is attached, and (c) no objection to the proposed amendment is filed with the Bankruptcy Court within five (5) calendar days from the later of the date the notice of the proposed Non-Material Amendment is served or the date the notice of the proposed amendment is filed with the Bankruptcy Court.

      1.4    <u>Payment of Prepetition Obligations</u>. Subject to <u>Section 5.1</u> of this Final Financing Order, Bank or its assignees or designees are entitled to apply any and all proceeds of the Collateral or any other consideration received by Bank in respect of the Prepetition Obligations in accordance with the Prepetition Facility and the DIP Loan Documents.

      1.5    <u>Payments and Application of Payments</u>. Debtors are authorized to and shall make all payments and transfers of interests in property to Bank as provided, permitted, or required under the DIP Loan Documents. Subject to <u>Section 5.1</u> of this Order, such transfer and payments shall not be subject to avoidance under section 549 or any other claim, charge, setoff, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or contract.  Subject to <u>Section 5.1</u> of this Final Financing Order, Bank shall be entitled to advance, make payment, and/or deduct for any Bank Expenses, including without limitation the payment and/or reimbursement to Bank of all present and future fees, reasonable attorneys' fees, reasonable professionals' fees, costs, and expenses paid or incurred by Bank, all of which shall be and are included as part of the principal amount of the Obligations.  The Debtors shall provide a monthly statement of Bank Expenses to counsel for the Committee, and the United States Trustee.

      1.6    <u>Cash Management Procedures</u>.  All agreements, cash deposit accounts, and procedures with respect to the dominion, transfer, or possession of the Prepetition Collateral, including without limitation all Cash Management Agreements in effect as of the Petition Date and as contemplated under the Prepetition Financing Agreements and Cash Management Agreements, shall continue in full force and effect without interruption and shall apply with equal force to the Collateral and the DIP Loan Documents.

8

Section 2.       Authorization and Conditions to Use Cash Collateral.

2.1       Authorization to Use Cash Collateral.   Debtors are authorized to use Cash Collateral to pay all Obligations as required and/or provided under the Addendum and such other amounts as permitted under the DIP Loan Documents.

2.2       Cash Collateral.   Debtors are authorized and directed to deposit or otherwise deliver all Cash Collateral, regardless of the source of such Cash Collateral, now or hereafter in its possession or under its control, to Bank in a manner satisfactory to Bank promptly upon receipt thereof and as provided in the Cash Management Agreements.

2.3       Cash Collateral in Bank's Possession.  Bank is authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and other forms of payment now or hereafter coming into its possession or under its control and apply such payments in accordance with the DIP Loan Documents, the Cash Collateral Order and the Financing Orders, including Sections 1.4 and 1.5 of this Order.

Section 3.       Postpetition Lien; Superpriority; Adequate Protection.
3.1       Postpetition Liens.

3.1.1       Postpetition Financing Liens.  Bank shall have and is hereby granted the Postpetition Financing Lien on all Collateral to secure the Postpetition Financing. More specifically, as security for all the Postpetition Obligations, Borrower and JLS each hereby grant to Bank (i) a first priority Lien upon and security interest in all of Borrower's and JLS's prepetition and postpetition existing and future acquired assets and the proceeds and products thereof of the same character and category as are subject to the Prepetition Liens securing the Prepetition Obligations; (ii) a priming Lien against the Borrowing Base Collateral, pursuant to 11 U.S.C. § 364(d)(1); (iii) pursuant to 11 U.S.C. § 364(c)(2), a first priority Lien against all unencumbered assets  of Borrower and JLS; and (iv) pursuant to 11 U.S.C. § 364(c)(1), a

9

subordinate Lien against all remaining assets of Borrower and JLS (in each case excluding Avoidance Claims).

3.1.2   <u>Postpetition Adequate Protection Liens</u>. Bank shall have and is also hereby granted a Postpetition Adequate Protection Lien on all of the Collateral as additional Adequate Protection.

3.1.3   <u>Postpetition Liens Priority</u>.  The Postpetition Liens shall be and shall continue to be at all times first and senior in priority to all other interests and liens of every kind and nature, whether created consensually, by an order of any court including this Court, or otherwise, including without limitation liens or interests granted in favor of any other person or entity in conjunction with section 363, 364, or any other section of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Postpetition Liens shall not prime and shall in all respects be subject, junior and subordinate to the (i) Carve Out Amount; (ii) those prepetition liens of Other Secured Creditors that were senior as of the Petition Date to the Prepetition Liens (including any validly perfected prior statutory liens and Permitted Liens) to which such Postpetition Liens relate; and (iii) statutory liens perfected postpetition in accordance with <u>Section 3.1.4</u> of this Order. Except for the priming lien pursuant to which the Bank's Post petition Liens shall prime the Bank's Prepetition Liens, no Other Secured Creditors' liens are being primed pursuant to the terms of this Final Financing Order.

3.1.3.1   <u>Priority Among Postpetition Liens</u>.  As between the Postpetition Financing Lien and Postpetition Adequate Protection Liens, the Postpetition Financing Lien shall be senior to all those Postpetition Adequate Protection Liens; <u>provided</u>, <u>however</u>, the Postpetition Financing Lien shall in all respects be subject, junior and subordinate to (i) such Postpetition Adequate Protection Lien, if any, that relates to a prepetition lien if such Adequate Protection Liens protects the prepetion liens of an Other Secured Creditor that was senior to the Prepetition

10

Liens as of the Petition Date; and (ii) statutory liens perfected postpetition in accordance with Section 3.1.4 of this Final Financing Order.

3.1.3.2 <u>Priority Among Postpetition Adequate Protection Liens</u>. Each Postpetition Adequate Protection Lien shall have the same priority relative to other Postpetition Adequate Protection Liens, whether pursuant to law or contract, as the prepetition lien to which such Postpetition Adequate Protection Lien relates.

3.1.3.3 <u>Priority of Postpetition Liens to Avoided Liens</u>. Notwithstanding anything to the contrary in this Final Financing Order or the DIP Loan Documents, the Postpetition Liens shall not be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of Debtors or their Estates under section 551.

3.1.3.4 <u>Statement of Intent</u>. It is the intent of this Final Financing Order and acknowledged by the Bank that the liens and claims granted herein to the Bank shall be deemed to be subject, junior and subordinate to (i) the prepetition liens of Other Secured Creditors that were senior to the Prepetition Liens as of the Petition Date, including any validly perfected prior statutory liens; (ii) the Postpetition Adequate Protection Liens related to the prepetition liens that were senior to the Prepetition Liens as of the Petition Date; and (iii) statutory liens perfected postpetition in accordance with Section 3.1.4 of this Order.

3.1.4 <u>Postpetition Liens Perfection</u>. This Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Postpetition Liens, effective as of the date and time of entry of this Final Financing Order, without any further Perfection Act. Notwithstanding the foregoing, if the Bank shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate a Perfection Act, the Bank is authorized to perform such acts, and Debtors are authorized and directed to perform such act to the extent necessary or required by the Bank and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. Notwithstanding any provision of this Final Financing Order or the DIP Loan Documents to the contrary, to the extent any party in interest (including the Bank)

105727.910/1809942v.1
02/26/20106:20:21 PM

is authorized by statute to perfect a lien post-petition and such statute affords such party in interest or secured party seniority position, nothing contained herein or in the DIP Loan Documents shall be deemed to alter, modify or amend such statutory authorization. The Bank may choose to file, record, or perform a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act. Should the Bank so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Liens by virtue of entry of this Final Financing Order.

3.2     <u>Superiority Administrative Expense</u>. Bank shall have a Superpriority Claim with Superpriority in payment afforded by section 364(c)(l), which shall have priority in right of payment over any and all other unsecured obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by Debtors, including without limitation any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 1114, and other sections of the Bankruptcy Code including those resulting from the conversion of any of the Bankruptcy Cases pursuant to section 1112, and shall at all times be senior to the rights of Debtors, or any creditor or other party in interest in the Bankruptcy Cases or any subsequent proceedings under the Bankruptcy Code; **<u>provided however</u>**, the Superpriority Claim shall be subject, junior and subordinate to the (i) Carve Out Amount, (ii) the prepetition liens of Other Secured Creditors that were senior to the Prepetition Liens as of the Petition Date, (iii) Postpetition Adequate Protection Liens that relate to prepetition liens of Other Secured Creditors that were senior to the Prepetition Liens as of the Petition Date, and (iv) the allowed administrative fees and expenses in any Chapter 7 that have priority pursuant to Section 726(b) of the Bankruptcy Code.

3.3     <u>Carve Out Expenses</u>.

3.3.1     <u>Carve Out Amount</u>. Notwithstanding anything contained herein to the contrary, the Prepetition Liens, Postpetition Liens, Prepetition Obligations, Postpetition

12

Obligations, Superpriority Claim, or any allowed 507(b) Claim, shall be subject and junior to the Carve Out Amount..

      3.3.2   <u>Excluded Professional Fees</u>.  Notwithstanding anything to the contrary herein, the Carve Out Amount shall not include, and no Collateral shall be used to pay any Professional Fees incurred in connection with an Adverse Action.

      3.3.3   <u>Carve Out Account</u>.  Bank may, in its sole discretion, fund a Carve Out Account by making one or more Advances under the terms of the Addendum, to be held in an account maintained by Bank in order to pay in full the Carve Out Amount , which, subject to the rights of Professionals with respect to the Carve Out Amount, shall be encumbered by the Postpetition Liens.  The Carve Out Amount shall only be satisfied from the Carve Out Account, and Bank shall have no further liability for the Carve Out Amount whatsoever and shall be deemed fully released from any and all claims, demands, or obligations relating to the Carve Out Amount.  With respect to the Carve Out Account, at Bank's discretion, Bank shall be able to assign such Carve Out Account to any Debtor in trust for the beneficiaries thereof or, upon the agreement of Professionals for Debtors and the Committee, such other party as custodian of such funds for the benefit of the beneficiaries thereto as provided herein, at which time Bank shall be relieved and the assignee shall assume all responsibilities with respect to the Carve Out Account as provided herein.

      3.3.4   <u>Payment of Carve Out Amount</u>.  Any payment or reimbursement made either directly by or on behalf of Bank at any time in respect of any Professional Fees allowed by the Bankruptcy Court incurred on or after the occurrence of an Event of Default that results in the cessation of available postpetition financing, shall, in either case, permanently reduce the Carve Out Amount on a dollar-for-dollar basis.  Bank's obligation to fund or otherwise pay the Carve Out Amount shall constitute Obligations secured by the Collateral, and entitle Bank to all of the rights and protections under this Final Financing Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.  Upon the occurrence and during the continuation of an Event of Default, to the extent unencumbered funds are not available to pay administrative

13

expenses in full, the claims, interests and liens granted in this Final Financing Order to the Bank, the Postpetition Bank Liens ranking junior in priority to such claims, interests and liens of the Bank shall all be subject to payment of the Carve Out Amount.  Payment of the Carve Out Amount, whether by or on behalf of Bank or otherwise, shall not be deemed to reduce the Obligations and shall not be deemed to subordinate the Postpetition Liens or Superpriority Claim to any prepetition or postpetition lien, interest, or claim in favor of any other party.  Subject to the Carve Out Amount, Bank shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Bankruptcy Cases under any chapter of the Bankruptcy Code, and nothing in <u>Section 3.3</u> of this Order shall be construed to obligate Bank or any other party in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that Debtors have sufficient funds to pay such compensation or reimbursement.

   3.4 <u>Section 507(b) Priority</u>. Bank shall have an allowed superpriority administrative claim in accordance with Section 507(b) of the Bankruptcy Code as further Adequate Protection for the Debtors use of Cash Collateral and for the Post Petition Financing.

Section 4. <u>Default; Rights and Remedies; Relief from Stay.</u>

   4.1 <u>Events of Default</u>.  An "Event of Default" as such term is defined in Section 5.1 of the Addendum shall constitute an "Event of Default" under this Final Financing Order. Additionally, the Debtors' failure to perform any of the terms, conditions, or covenants or its obligations under this Final Financing Order shall constitute an Event of Default under the terms of this Final Financing Order

   4.2 <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuation of an Event of Default or other termination of the Bank's obligations to provide Post Petition Financing, Debtors shall be bound by all restrictions, prohibitions, and other terms as provided in the Financing Orders and the DIP Loan Documents and Bank shall have no obligation to make Advances or provide other financial accommodations, or otherwise perform its obligations under the DIP Loan Documents; Bank may elect any and all consequences of such

14

Event of Default and shall be entitled to take any act or exercise any right or remedy provided in any DIP Loan Document subject to <u>Section 4.3</u> of this Order and the right of Professionals to payment from the Carve Out Amount.

    4.3    <u>Relief from Automatic Stay</u>.  The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the Court or by law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit Bank to perform any act authorized or permitted under or by virtue of this Final Financing Order as follows:

    4.3.1   Effective immediately (i) to implement the Postpetition Financing pursuant to the terms of this Final Financing Order and the DIP Loan Documents other than exercising rights or remedies available upon an Event of Default, (ii) to take any act to create, validate, evidence, attach, or perfect the Postpetition Liens, including without limitation, entering into Cash Management Agreements, and (iii) to assess, charge, advance, deduct, and receive payments with respect to the Obligations including Bank Expenses, and apply such payments to the Obligations pursuant to the DIP Loan Documents and this Final Financing Order, and

    4.3.2   Upon the occurrence of and during the continuation an Event of Default consistent with any notice and cure periods provided in the applicable DIP Loan Documents, as follows:

    4.3.2.1  To take certain actions and exercise certain rights available upon the occurrence and during the continuation of an Event of Default as provided in this Final Financing Order and/or the DIP Loan Documents other than enforcing rights and remedies in connection with the Collateral, including without limitation terminating and withholding their consent to Debtors' use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide financial accommodations to or on behalf of Debtors including Letters of Credit, and terminating the commitment of Bank to provide any further advances and financial accommodations to or for the benefit of Debtors (all subject to the rights of the Professionals to receive payment from the Carve Out Amount); and

4.3.2.2   To take any action and exercise all rights and remedies as provided in this Final Financing Order and/or the DIP Loan Documents (consistent with any cure periods and notice requirements, if any, provided in the Addendum) with respect to the Collateral and/or terminating Debtors' use of Bank's Cash Collateral other than the Carve Out Amount, in each case effective upon further order of the Court granting relief from any applicable stay or injunction to be heard on an expedited basis on not less than ten (10) days notice to counsel for Debtors, counsel for the Committee, counsel to any other committee appointed by the Court and the United States Trustee, with Bank reserving all rights to seek such relief earlier upon the appropriate showing.

4.4   <u>Right to Credit Bid</u>.  In all events, pursuant to section 363(k), Bank reserves the right to use the Obligations or any part thereof to credit bid with respect to any bulk or individual sale of all or any portion of the Collateral under applicable law.

4.5   <u>No Duty to Marshall</u>.  Neither Bank nor the Collateral shall be subject to the doctrine of marshalling.

Section 5.   <u>Representations; Covenants; and Waivers</u>.

5.1   <u>Objections to Prepetition Obligations and Prepetition Liens</u>. Prepetition Claim Objections, if any, shall be filed with the Court by the Committee or any other party in interest in the Bankruptcy Cases with the requisite standing on or before the later of May 31, 2010 or 100 days following the Bankruptcy Court's entry of the Final Financing Order. If no Prepetition Claim Objection is timely filed or if a Prepetition Claim Objection is timely filed but denied, (i) the Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind by Debtors or any other Releasing Party (as defined in Section 4.3 of the Addendum to Credit Agreement, a "Releasing Party") , and shall not be subject to any further objection or challenge by Debtors or any other Releasing Party at any time, and the Prepetition Liens shall be deemed legal, valid, perfected, enforceable, and unavoidable for all purposes and of first and senior priority subject to only the Permitted Liens and Claims that had priority over such Prepetition Liens, and (ii) Bank and its respective

16

agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action held by any Releasing Party related to or arising out of the Prepetition Financing Agreements, the Prepetition Liens or Prepetition Collateral and shall not be subject to any further objection, challenge, or action by any Releasing Party at any time. To the extent either the Prepetition Obligations, the Prepetition Liens, or any claim on behalf of Bank relating thereto are disallowed in whole or in part by the Bankruptcy Court, any disallowance in whole or in part of either the Prepetition Obligations, the Prepetition Liens, or any claim on behalf of Bank relating thereto shall not affect Banks' right (to the extent such a right exists) to collect such amounts due from any person or entity other than the Debtors.

     5.2    <u>Debtors' Waivers</u>. As part of the Adequate Protection in favor of Bank, effective at all times during the Bankruptcy Cases and whether or not an Event of Default has occurred (except to the extent provided in this Final Financing Order or in the DIP Loan Documents), each Debtor irrevocably waives any rights that it may have to seek authority (i) prior to satisfaction of the Borrowing Base Obligations and Contingent Obligations in full, to use Cash Collateral of Bank under section 363, under any circumstance, without the further express, written consent of Bank as or as provided in the Cash Collateral Order or the Financing Orders, (ii) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) other than from Bank unless such authority results in the Borrowing Base Obligations being indefeasibly paid in full as set forth in Section 5.3 below and in Section 6.8 of the Addendum, (iii) to challenge the application of any payments to Bank authorized by this Final Financing Order pursuant to section 506(b), or to assert that the value of the Borrowing Base Collateral is less than the Borrowing Base Obligations, or (iv) to propose or support a plan of reorganization that would constitute or result in an Event of Default under the DIP Loan Agreement; <u>provided</u>, <u>however</u>, Bank may otherwise consent in writing, without such consent being implied from any other action, inaction, or acquiescence by Bank.

17

5.3     Approval of DIP Financing from New DIP Lender.   In the event that the Bankruptcy Court approves debtor in possession financing to a New DIP Lender for any reason at any time, the New DIP Lender shall be required to pay the Bank the Borrowing Base Obligations and satisfy the Continget Obligations as provided in Section 6.8 of the Addendum.

5.4     Debtors' Releases. Subject to Section 5.1 the releases by Debtors of any claims, actions or defense against Bank pursuant to Section 4.3 of the Addendum or otherwise are hereby approved.

5.5     Section 506(c) Claims.   All funding is coming from the use of Cash Collateral or the Postpetition Financing.   There is no basis for any claim prior to an Event of Default and notice by Bank of its determination to cease providing advances and/or financial accommodations to Debtors to be charged against Bank or the Collateral pursuant to section 506(c) or any similar principle of law without the prior written consent of Bank, and no such consent shall be implied from any other action, inaction, or acquiescence by Bank.

5.6     Releases.   Subject to the provisions of Section 5.1, the Release by the Debtors as set forth in Section 4.30 of the Addendum shall become effective as to the Debtors. Section 5.1 shall govern the effective date of the Release as to other parties in interest including the Committee.

Section 6.   Other Rights and Obligations.

6.1     No Modification or Stay of This Order.   Notwithstanding (i) the issuance of any order or an act (a) that operates as a stay, modification, amendment, supplement, vacating, revocation, or reversal of this Final Financing Order, or (b) that is contrary to this Final Financing Order, any DIP Loan Document(s), or any term hereunder or thereunder, or (ii) the dismissal or conversion of the Case, (A) the acts taken by Bank in accordance with this Final Financing Order, and (B) the Postpetition Obligations incurred or arising prior to Bank's actual receipt of written notice expressly describing the occurrence of such event, and all rights, interests, remedies, benefits, consents, claims, and obligations, including without limitation the Obligations, the Postpetition Liens, the Superiority Claim, and any 507(b) Claim incurred prior

18

to actual receipt by Bank of notice of such stay, modification, amendment, supplement, vacating, revocation or reversal of this Order, shall be governed in all respects by the original provisions of this Final Financing Order and shall remain valid and in full force and effect pursuant to section 364(e).  For purposes of section 364(e), "appeal" shall include any proceeding for reconsideration, amending, vacating, rehearing, or re-evaluation of this Order by this Court or any other tribunal.

6.2     Power to Waive Rights; Duties to Third Parties. Bank shall have the right to waive any Bank Rights, and shall have no obligation or duty to any other party with respect to or by reason of Bank's exercise or enforcement, or failure to exercise or enforce any Bank Right. Any waiver by Bank of any Bank Right shall not be or constitute a continuing waiver. A delay in or failure to exercise or enforce any Bank Right shall neither constitute a waiver of such Bank Right subject Bank to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtors or any other person or entity to Bank.

6.3     Reservation of Rights. Except as provided herein, this Final Financing Order is in addition to and without prejudice to the rights of Bank and any other party in interest to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable agreement or law, including without limitation rights to contest the sufficiency of Adequate Protection afforded to Bank pursuant to this Final Financing Order or otherwise, or to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, debtor in possession financing provided by a New DIP Lender, any plan proposed by any party or any priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other persons or entities seeking compensation or reimbursement from the Estate.

105727.910/1809942v.1
02/26/20106:20:21 PM

6.4     Binding Effect.  This Final Financing Order shall be binding upon Debtors, all parties in interest in the Bankruptcy Cases, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Bankruptcy Cases or any subsequently converted bankruptcy case(s) of Debtors.  This Order shall also inure to the benefit of Bank, Debtors, and their respective successors and assigns.  The provisions of this Final Financing Order and the DIP Loan Documents, and the Postpetition Liens, Obligations, Superpriority Claim, 507(b) Claim, and any and all rights, remedies, privileges, interests, and benefits in favor of Bank provided or acknowledged in this Final Financing Order or the DIP Financing Documents, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Financing Order pursuant to Bankruptcy Rules 4001 and 7062, shall continue in full force and effect, and shall survive entry of any other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Bankruptcy Cases to any other chapter under the Bankruptcy Code, or dismissing the Bankruptcy Cases.  Any order dismissing the Bankruptcy Cases under section 1112 or otherwise shall provide by virtue of this Final Financing Order (in accordance with sections 105 and 349) that (a) the Superpriority Claim, determining any 507(b) Claim, the Postpetition Liens and the rights of the Professionals in the Carve Out Account or Carve Out Amount shall continue in full force and effect to the greatest extent permitted by applicable law, notwithstanding such dismissal, until the Obligations are paid and satisfied in full, and (b) this Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the 507(b) Claim, the Postpetition Liens, the Carve Out Amount, and the rights, privileges, interests, and benefits provided or acknowledged in this Order.

6.5     Term.  Notwithstanding any term of this Final Financing Order to the contrary, Bank's commitment to provide further Postpetition Financing and its consent to Debtors' limited use of Cash Collateral as provided herein may be terminated by Bank, at its option and discretion, on or after an Event of Default.

6.6     Limited Effect.  In the event of a conflict between the terms and provisions of any DIP Loan Document and this Final Financing Order, the terms and provisions of this Final Financing Order shall control.

6.7     Objections Overruled or Withdrawn.  All objections to the DIP Financing Motion (if any) with respect to entry of the Final Financing Order are hereby overruled or withdrawn.

DATED this _____ day of March, 2010.


_____
United States Bankruptcy Judge


STIPULATED AND AGREED TO:



By: /s/ Harvey Sender
Harvey Sender, #7746
John B. Wasserman, #10011
SENDER & WASSERMAN PC
1660 Lincoln Street, Ste. 2200
Denver, CO. 80264
Telephone: (303)-
Facsimile: (303)
Email:
ATTORNEYS FOR THE DEBTORS


By: /s/ Risa Lynn Wolf-Smith
Risa Lynn Wolf-Smith, #15835
Jack L. Smith, #2640
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone:  303-295-8011
Facsimile:  303-295-8261
E-mail:  rwolf@hollandhart.com
Jsmith@hollandhart.com
And
Bruce W. Leaverton, WSBA #15329
Mary Jo Heston , WSBA #11065
LANE POWELL PC

Telephone: (206) 223-7000
Facsimile: (2060 223-7107
Email: Leavertonb@lanepowell.com
Hestonm@lanepowell.com
**ATTORNEYS FOR WELLS
FARGO BANK, NATIONAL ASSOCIATION,**

4743699_2.DOC

22